WILLIAM STOKER, Plaintiff in Error, *v.* DARIUS GREENUP *et al.*,
Defendants in Error.

ERROR TO WASHINGTON.

A plaintiff who is present at a sheriff's sale of land decrying the title of the
defendant; if he afterward acquires the same land from a deputy sheriff to
whom it was sold for ten dollars, to be satisfied by his fees due for previous
services rendered in the same suit, will not be considered a *bona fide* purchaser.
In such a case where the defendant neglected to redeem, and rested a long time
without seeking redress, the parties being old litigants, the court will compel
each to do equity.

A sale to a deputy sheriff to be satisfied in his fees is irregular, the proceeds of
the sale should be money, to be divided among all those having rights therein.

Land sold under execution should be offered in parcels; a sale of one hundred and
sixty acres in mass for ten dollars, will not be approved.

THIS cause was submitted to UNDERWOOD, Judge, on bill,
answer, replication and evidence, at October term, 1854, of
the Washington Circuit Court, who dismissed the bill at cost
of the complainant, and he sues òut this writ of error. The
opinion of the court furnishes a statement of the case.

T. I. LECOMPTE and W. STOKER, for Plaintiff in Error.

W. H. & J. B. UNDERWOOD and P. E. HOSMER, for Defend-
ants in Error.

SKINNER, J.   This was a bill in.equity to. set aside a sale of
land sold on execution, and to enjoin actions brought by the
holder of the title acquired under the execution sale against
the execution debtor for cutting timber on ' the land.   The
case shows a judgment recovered in the circuit court by
Lamb and Greenup against Stoker, in 1845, for $106; that
execution issued upon said judgment, and came to the hands
of the sheriff of Washington county to execute; that one
Harris, his deputy, levied the same on one hundred and sixty
acres of land as the property of Stoker; that after the levy,
the execution came to the hands of one Ramsey, as coroner of
said county, who in the same year sold the whole tract at
public sale to said Harris for his fees in the case, amounting
to ten dollars; that Harris afterward obtained a deed therefor
and conveyed the land to said Greenup.   The record also
shows that the land was susceptible of more advantageous sale
in smaller portions, and that the same was sold at an enormous
sacrifice, mainly on account of reports then in circulation
adverse to the title of Stoker to the land; that Greenup was
present at the sale and declined bidding, and by his conduct

and remarks contributed to produce the impression that Stoker's title was worthless; that no one bidding, Harris offered to bid on the land the amount of his fees, being ten dollars, and that the same was struck off to him at that sum, and the bid applied to his fees in the case. It is very clear that the land was sacrificed by reason of doubts and fears in the public mind of Stoker's title, that Greenup countenanced and encouraged them, and finally himself obtained the title derived under the sale. We cannot regard Greenup a *bona fide* purchaser without shutting our eyes against those lights by which men's actions and motives are usually judged; and to permit him, as such, to hold the land, would be to encourage schemes to prevent that competition at judicial sales which it is the policy of the law to obtain. Nor can we regard the sale to Harris, the officer who made the levy, in satisfaction of his costs in the case, in any more favorable light. The coroner had no right to sell except for money, and the money produced from the sale did not belong exclusively to Harris. Others were equally interested with him in obtaining their costs, and had equal right to payment out of the proceeds of the sale. To allow Harris to hold the one hundred and sixty acres of land on account of his costs (and such would be the effect should we sustain the sale), would be unjust to other officers of court having costs in the case and to the judgment creditors, and would sanction practices in public officers wholly inadmissible.

But Stoker for some three years slept on his rights, neither redeeming the land by paying the paltry sum required for that purpose, nor attempting to avoid the sale. In 1848, on being sued by Greenup for trespasses on the land, he filed his bill for equitable relief, and since then the cause has been pending, and is now for the second time in this court. Equity favors vigilance, and will not encourage the litigous inclinations of individuals. Stoker must be ready to do equity when he invokes it in his behalf, and we feel not only justified, but required, under all the circumstances of the case, to grant the relief prayed upon terms equitable in themselves, and which will remove one source of litigation between Stoker and Greenup, names now quite familiar in this court.

The decree of the circuit court is reversed, and the cause remanded, with directions to enter a decree setting aside the sale, and also the conveyance to Greenup, and adjusting such rights as may exist arising out of the execution, sale, and the conveyance to Greenup, upon Stoker paying, or showing that he has paid, the judgment mentioned in the complainant's bill and the interest thereon, together with the costs accrued, within a period to be fixed on in such decree; and in default

thereof that a decree be entered dismissing the complainant's bill. Stoker to recover of Greenup his costs in this court. Reversed and remanded.

*Decree reversed.*