WILLIAM S. LURTON *et al.*

*v.*

JOHN RODGERS.

*Filed at Springfield November 24, 1891.*

1. EXECUTION SALE—*inadequate price.* Where lots of the value of $2000 above all incumbrances were sold under execution for only $60, it was held that the price was grossly inadequate.

2. SAME—*sale en masse for inadequate price—setting aside.* Where a lot of forty feet front by one hundred and eighty feet deep, of the value of $2000, was levied on and sold by the sheriff in gross for $60, and it was shown that the property consisted of two lots, each of twenty feet frontage, on one of which there was a business house two stories high and that the other part was vacant, it was *held,* that the sale of the entire property in gross, without division, was irregular, and that this, coupled with the gross inadequacy of the price, was sufficient to authorize a decree allowing a redemption from the sale.

3. Where property susceptible of division is sold *en masse* for an inadequate price, without first offering the same in separate parcels, the sale will be set aside on application of the former owner within a reasonable time.

4. While it is true that mere inadequacy of price will not ordinarily be held sufficient, of itself, to set aside a sheriff's sale, yet it may be considered in connection with other irregularities in the proceedings; and when the inadequacy is great, the sale may be set aside upon slight additional circumstances.

5. SAME—*laches in filing bill to redeem.* Where property susceptible of division was levied on and sold under execution at a grossly inadequate price, and bill was filed by the owner for leave to redeem from the sale ten months after the time of redemption had expired, and the debtor was induced to believe no sale would be made by the creditor, who was the purchaser, and the former was ignorant of the sale, it was *held,* that there was no such *laches* in filing the bill as to defeat his right to have the sale set aside and to redeem.

APPEAL from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

This was a bill in chancery, brought by John Rodgers, against William S. Lurton and Lou C. Lurton, to set aside a sheriff's deed, and to redeem from the sale in pursuance of which said deed was executed. The bill alleges, that on the 15th day of February, 1887, the complainant was the owner in fee of the south forty feet of lots 40, 41 and 42, in the original town of Jacksonville, the same then and still being worth from $3000 to $3500, and being subject to a mortgage for $500, thus leaving the net value of the complainant's interest therein from $2500 to $3000; that on said 15th day of February, 1887, William S. Lurton commenced a suit against the complainant and another before a justice of the peace, and on the 21st day of said month recovered a judgment against the complainant in said suit for $41.62, and costs of suit, amounting to $5.70; that on the same day said Lurton swore out an execution on said judgment, and had a constable of the county return it "no property found;" that Lurton thereupon obtained a transcript of said judgment, and on March 4, 1887, filed the same with the clerk of the circuit court of the county, and had an execution issued thereon and delivered to the sheriff of the county; that on the 5th day of March, 1887, said sheriff levied

upon the complainant's interest in the real estate above described, and on June 25, 1887, sold the same to said Lurton for $60, and executed to him a certificate of purchase therefor; that on the 26th day of September, 1888, said sheriff executed a deed of said property to said Lurton in pursuance of said certificate, and that on the 7th day of January following, said Lurton conveyed said property to Lou C. Lurton, his wife.

The bill further alleges, that after Lurton had filed his transcript with the clerk of the circuit court he came to the complainant and told him what had been done, and asked him to turn over the accruing rents on his property in satisfaction of his judgment, to which the complainant replied that he could not do so, as he had collected his rents for six months in advance; that Lurton seemed satisfied, and assured the complainant that as his judgment had become a lien on the complainant's property, he was secure, and that the complainant might go away and rely upon nothing more being done in the matter for a year, and that during that time the complainant might have an opportunity to earn the money and pay the judgment; that, relying on these statements, the complainant went to the State of Missouri, and, with the exception of a visit of one week in January, 1889, did not return to Jacksonville until June 23, 1889; that on his return he went to Lurton to pay him what was due on said judgment, and then learned for the first time, to his great astonishment, that his said property had been sold on execution to Lurton for $60; that the period of redemption had expired; that a sheriff's deed had been executed conveying said property to Lurton, and that he was in possession of said property; that the complainant offered to pay Lurton said sum of $60 and interest, and a reasonable compensation for his trouble, if he would deed the property back to the complainant, but that Lurton refused said offer, saying that he had a deed for said property and that he proposed to keep it if he could. The bill points out a considerable number of what are claimed to be material

irregularities in the proceedings which resulted in said sale and said sheriff's deed. These irregularities, so far as the decision of the case may render necessary, will be more fully referred to hereafter. The bill further alleges, that the conveyance from Lurton to his wife was without consideration, and with full knowledge on her part of the complainant's rights.

The defendants, by their answer, admit the recovery of said judgment before the justice of the peace, the return of execution thereon "no property found," and the filing of a transcript of said judgment with the clerk of the circuit court, but deny that any promise was made by Lurton to the complainant to delay the enforcement of said judgment, and allege that Lurton went to the complainant and told him that the transcript had been filed, and that his property would be sold under the judgment if he did not attend to the matter, but that complainant said the land could go, and made no effort whatever to pay the judgment or to redeem from said sale; that after the sale was made the complainant was notified of it, and that he made no effort to avail himself of his right of redemption; that after the sale and notice he left the State and went to Missouri, and expressed himself as not intending to do anything in regard to said property. The answers deny that said property was ever worth $3000, or half of that sum; that at the time of said sale it was not worth more than $1200, and was subject to a mortgage for $500, which, with interest in arrears and unpaid taxes, made an incumbrance of about $800; that at the time of the sale the property could not have been sold for more than $1000 in cash; that said property was duly advertised and sold at public auction, and bid off by Lurton, and that the complainant had notice of such sale, and could have redeemed therefrom if he had chosen to do so. The answers deny all fraud, as well as the irregularities charged in the bill, and allege that the complainant willfully and intentionally, after notice, refused to redeem said lands, when told that if he did not he would lose them, and that now,

after the right to redeem under the statute had passed, he has no right to complain, and has no standing in a court of equity.

The decree finds that the equities are with the complainant, and that the material allegations of the bill are true as therein stated, and orders that the complainant be allowed to redeem said property from said sale, such redemption to be made subject to the existing mortgage thereon, and upon condition that the complainant pay to said Lurton the amount of his bid, with eight per cent interest, and also the several amounts of money which Lurton has paid for interest on the mortgage and for improvements, taxes, insurance, etc., less the rents received by him for said property. The decree states the account of payments made and rents collected by Lurton, and finds the amount due him on redemption, including the amount of his bid and interest, to be $440.07, and orders the complainant, within thirty days, to pay to Lurton that sum, with interest to the day of payment, and also the costs of the proceeding; and further orders, that upon such payment being made, the sheriff's deed to Lurton, and the deed from Lurton to his wife, be set aside and declared null and void, and that the title to said property vest in the complainant or his grantees, and that the Lurtons surrender said premises, and all deeds of the same in their possession, to the complainant, but it was further ordered that upon default by the complainant in making the payment, the bill should be dismissed.

Messrs. MORRISON & WHITLOCK, for the appellants:

To have the sale set aside for irregularity, the party must act promptly. He can not lie still until the right of redemption has expired, and until the price of the land has raised, and the rights of others intervened, and then assert his rights. *Stone* v. *Gardner,* 20 Ill. 304; *Prather* v. *Hill,* 36 id. 402; *Fergus* v. *Woodworth,* 44 id. 374; *Noyes* v. *True,* 23 id. 503; *Dobbins* v. *Wilson,* 107 id. 17.

There is nothing in either the location or use of the property showing that it should have been divided, .or sold otherwise than *en masse.   Ridenour* v. *Shideler,* 5 Bradw. 186 ; *Bank* v. *Flagg,* 31 Ill. 290.

Mr. CHARLES A. BARNES, for the appellee :

When the price is grossly inadequate and the sale is irregular, the sale will be set aside on equitable terms.   *Thomas* v. *Hebenstreit,* 68 Ill. 115 ; *Dutcher* v. *Leake,* 44 id. 398 ; *Dickerman* v. *Burgess,* 20 id. 266 ; *Comstock* v. *Purple,* 49 id. 158 ; *Wright* v. *Deck,* 116 Ind. 538 ; *Beam* v. *Heffendorf,* 84 Ky. 685.

Where a deed is set aside for inadequacy, etc., it will be on the principle of redemption, allowing the deed to stand as security for all money advanced.   *Howland* v. *Petty,* 15 U. S. 603 ; *Thomas* v. *Hebenstreit,* 68 Ill. 115.

It is the duty of the sheriff to offer for sale real estate which he has levied on, in separate tracts.   He should endeavor to satisfy executions by the sale of as small an amount of property as possible.   *Cowen* v. *Underwood,* 16 Ill. 22 ; *Stoker* v. *Greenup,* 18 id. 27 ; *Morris* v. *Robey,* 73 id. 462 ; *Morrison* v. *Smith,* 130 id. 304 ; *Hay* v. *Baugh,* 77 id. 503 ; *Berry* v. *Lovi,* 107 id. 612.

As to the question of *laches,* see *Stoker* v. *Greenup,* 18 Ill. 27 ; *Haworth* v. *Taylor,* 108 id. 275 ; *Morris* v. *Robey,* 73 id. 462.

Mr. JUSTICE CRAIG delivered the opinion of the Court :

The evidence as to the value of the property in question at the time it was sold on execution clearly preponderates in favor of the complainant.   Seven witnesses were examined as to the value of the property, in behalf of complainant.   One placed the value at $3000, one at from $2800 to $3000, two at from $2500 to $3000, one at from $2500 to $2800, one at $2750, and one at $2200, the average of their estimates being a little over $2700.   Three witnesses only testified for the de-

fendants, one placing the value at $1500, one at $1300, and one at $1200. It is therefore plain that the circuit court was fully justified in adopting the value placed upon the property by complainant's witnesses, and we will presume, in support of the decree, that it did so. It must therefore be regarded as established, for all the purposes of this appeal, that the property, at the time of the sale, was worth at least $2700, and upon that basis the value of complainant's equity of redemption, after deducting the amount of the mortgage on the property and all accrued interest, was at least $2000. An interest of that value having been sold on the execution for only $60, no argument is required to show that the price for which the property sold was grossly inadequate. It is true that mere inadequacy of price will not ordinarily be held sufficient, of itself, to set aside a sheriff's sale, yet it may be considered in connection with other irregularities in the proceedings, and where the inadequacy is great, the sale may be set aside upon slight additional circumstances. *Beam* v. *Heffendorf*, 84 Ky. 685; *Wright* v. *Deck*, 116 Ind. 538; *Thomas* v. *Hebenstreit*, 68 Ill. 115; *Dickerman* v. *Burgess*, 20 id. 266; *Dutcher* v. *Leake*, 44 id. 400.

Several irregularities in the transcript and the sheriff's sale have been pointed out and relied upon in the argument of counsel, but in the view we take of the record it will only be necessary to consider one question. The property involved, which was sold on execution, is described as follows: Forty feet off the south side of lots 40, 41 and 42, original plat of Jacksonville. The property has a west frontage of forty feet on Mauvaisterre street, running back east one hundred and eighty feet, with an alley on the south and the east. It consists, as shown by the evidence, of two business lots, twenty feet front and one hundred and eighty feet deep. The north twenty feet was vacant, but on the south twenty feet a brick business house had been erected, two stories high, twenty by sixty feet. The property was located only a half block north

from the north-east corner of the public square in Jacksonville. The sheriff levied on the property as a single tract, and it was sold *en masse*, and struck off for the sum of $60, in plain violation of section 12, chapter 77, of the Revised Statutes of 1874, which reads as follows: "When real or personal property is taken in execution, if the same is susceptible of division it shall be sold in separate tracts, lots or articles, and only so much shall be sold as is necessary to satisfy the execution and costs." Here, the property was susceptible of division, and was regarded, as the evidence shows, as two business lots. There was, it is true, an old frame building on the east end of the property, in the rear of the brick building, extending from the south to the north line of the property, used as a warehouse, but this did not prevent a division of the property into two lots or parcels of land.

Where property susceptible of division has been sold *en masse* for an inadequate price, this court has held, in a number of cases, that the sale will be set aside, if application is made within a reasonable time. (*Morris* v. *Robey,* 73 Ill. 462; *Berry* v. *Lovi,* 107 id. 612; *Stoker* v. *Greenup,* 18 id. 28; *Day* v. *Graham,* 1 Gilm. 435.) In *Morris* v. *Robey,* in deciding the case, it is said: "Although inadequacy of price on an execution sale may be no ground for equitable relief without additional circumstances to justify it, we are of opinion that such additional circumstances do exist in the present case, and that they are to be found in the irregular mode of selling these eight separate lots in gross without having first offered them in parcels of two and more, less than the whole."

What was said in the case cited is applicable here. Property capable of division, worth $2000 clear of incumbrances, was sold *en masse* for the paltry sum of $60. We are aware of no principle upon which a sale of this character can be sustained. The sheriff had no right to sacrifice the property if it could be avoided, and it is apparent that the way was open to avoid a sacrifice of the property by offering it for sale

36—139 ILL.

in parcels. If the north half, twenty feet front by one hun--
dred and eighty feet deep, had been offered for sale, doubtless
it would have sold for the debt and costs; but whether it would
or not, the law required the sheriff to first offer the land in
parcels before he could be justified in selling it *en masse.*

But it is said that the complainant has been guilty of *laches,*
and upon that ground equity will not grant him relief. The
property was sold on the execution on the 25th day of June,
1887, and the time for redemption expired on the 25th day of
September, 1888, and this bill to vacate the sale and redeem
was brought July 15, 1889, less than ten months from the
time allowed by law for redemption. It is true, as a general
rule, where a party desires to make application to set aside a
sheriff's sale he ought to do so before the time of redemption
expires; but in this case the application is not one strictly to
set aside a sale, but the bill prays for leave to redeem from
the sale, and the court, as it was proper to do, granted the
relief upon equitable terms, which seems to be in harmony
with the former decisions of this court. Thus, in *Stoker v.*
*Greenup,* 18 Ill. 27, a bill was filed to set aside a sale of land
on execution, setting out facts similar to those relied upon
here. The court refused to vacate the sale absolutely, but
allowed an equitable redemption, as prayed for here. It is
there said: "But Stoker for some three years slept on his
rights, neither redeeming the land by paying the paltry sum
required for that purpose, nor attempting to avoid the sale.
Equity favors vigilance, and will not encourage the litigious
inclinations of individuals. Stoker must be ready to do equity
when he invokes it in his behalf, and we feel not only justified,
but required, under all the circumstances in this case, to grant
the relief prayed, upon terms equitable in themselves, etc.
The decree is reversed, and the cause remanded with directions
to set aside the sale," etc.

There was no such delay in this case as there was in the
case cited, where a redemption was allowed. But the delay

of the complainant is not without explanation. He testified that he had a conversation with Lurton in November, 1887, and that he told him he would pay the debt as soon as he got work. He said, "All right," and drove off. "I did not then know that the property had been sold. I went to Missouri in March, 1888, and came back in January, 1889. I first heard of the sale in December, 1888, in St. Louis. I had been gone since March, 1888. I saw him soon after my return, and told him I thought he had taken an advantage of me, and I was willing to pay him for his trouble. He said he could do nothing, as his wife had the deed. I asked him to see her, if she would do something. He turned and walked away. I offered to pay him for his trouble, and all that he had on it. He said he would see about it,—he could do nothing,—and walked away, and that was the last I saw of him." This was denied by Lurton, but both parties testified in person before the court, and the court had an opportunity to see the witnesses and judge of their relative credibility, and we will presume from the findings in the decree that the court gave credit to complainant's testimony on this question. If the facts were as testified by the complainant there was no such delay as would preclude a recovery. As respects Mrs. Lurton, it sufficiently appears from the evidence that she took title to the premises in question from her husband, with notice of the irregularities in the proceedings and of complainant's rights, and we are of opinion that the right of redemption was properly decreed as against her.

The decree of the circuit court will be affirmed.

*Decree affirmed.*