ESLIE DIMMITT

*v.*

L. H. FLINN.

*Opinion filed October 23, 1907.*

1. JUDICIAL SALES—*when judicial sale will be set aside.* A sale of property *en masse* for a grossly inadequate price without first offering the property, which was composed of some ten parcels, for sale in separate tracts will be set aside.

2. SAME—*when party does not occupy position of innocent purchaser.* A sister who pays two small judgments against her brother in consideration for a quit-claim deed from the purchaser of the brother's valuable undivided interest in land which was sold on execution *en masse,* for a grossly inadequate price, and who has full knowledge of all such facts, and of the further fact that the purchaser had agreed to make the quit-claim deed and allow the brother to redeem if the judgments were paid, does not occupy the position of an innocent purchaser and is bound to allow redemption.

WRIT OF ERROR to the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding.

W. L. COLEY, for plaintiff in error.

WILLIAMS & WILLIAMS, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On February 1, 1901, L. H. Flinn, the defendant in error, lived in Adams county, and on that day a judgment was rendered against him by a justice of the peace in favor of H. A. Lusk for $142.77 and costs. On the same day an execution was issued on the judgment, and the record of the justice does not show a compliance with the statute, which prohibits a justice of the peace from issuing an execution in any civil action until after the expiration of twenty days from the date of the judgment on which such execution is to be issued, unless the party applying for the same, his

agent or attorney, shall make oath that he believes that the debt will be lost unless execution be issued forthwith. A demand was made by the constable holding the execution upon L. H. Flinn, and it was returned the same day it was issued, "no property found." On the following day a transcript of the judgment was filed in the office of the clerk of the circuit court of Adams county. L. H. Flinn, the defendant in the execution, was the owner of an undivided one-third of a farm of 284.53 acres in Pike county, subject to a life estate of his mother, Sarah Flinn, who was to receive her support from the income of the farm and any surplus of such income was to be applied to the satisfaction of the debts of B. W. Flinn, deceased, father of L. H. Flinn, under the provisions of his will. An execution was immediately issued on the transcript of the judgment, directed to the sheriff of Pike county, who on February 7, 1901, levied the same upon the interest of L. H. Flinn in said farm. The sheriff advertised said interest and sold it *en masse* on April 27, 1901, to W. L. Coley, attorney for Lusk, for $75. The interest so sold was worth $3000 and is now worth $4000. The farm was situated in different quarter sections and embraced ten different tracts and subdivisions, which were susceptible of division and sale in separate parcels. In November, 1901, Sarah Flinn, the mother of L. H. Flinn, loaned some money to him and took a conveyance of his one-third interest in the estate, which she was to hold as security for re-payment of the money loaned and for his use and benefit. At the end of the statutory period for redemption a deed was made to Coley. Sarah Flinn was in possession of the farm, which was operated by her son James B. Flinn, administrator with the will annexed of the estate of B. W. Flinn, deceased, and neither she nor L. H. Flinn had any knowledge of the execution, sale or deed for several years afterward. The sale was for a grossly inadequate price, which is alleged to have resulted from the fact that a large claim on a note of B. W. Flinn, made in 1869, and

held by a daughter of James B. Flinn, had been filed against the estate. It is apparent that that claim could not have been established and that it never seriously alarmed any one who would have purchased at the sale. James B. Flinn operated the farm for five years without accounting for the rents and profits and paid off debts of the estate, but the administration dragged along until early in the year 1906, when there were negotiations for a settlement between the widow and James B. Flinn and the other parties interested. About that time Sarah Flinn and L. H. Flinn learned of the sale and deed to Coley. There was another judgment before a justice of the peace in favor of C. H. Doss against L. H. Flinn, and Coley also held that claim as attorney. Coley being applied to for the purpose of settling his claims, stated that he never felt that he wanted anything more out of the transaction than the amount of the claims which he held against L. H. Flinn, and that he would take the amount of the two judgments which he controlled, for a quit-claim deed and cancellation of the Doss judgment. He stated, however, that he had given to the plaintiff in error, Eslie Dimmitt, a sister of L. H. Flinn and owner of an undivided one-third of the farm, subject to the same life estate and charges as the interest of L. H. Flinn, the first chance for a settlement and conveyance on those terms, and that the parties would have to see her. The settlement with James B. Flinn was completed, and the understanding was that Coley was to make a deed conveying his interest on payment of the amount due on the Lusk and Doss judgments. Eslie Dimmitt was fully informed of the arrangement and settlement, and knew that Coley claimed nothing under his deed except payment of the two judgments, which Sarah Flinn and L. H. Flinn were willing to pay. On July 20, 1906, Coley made a quit-claim deed to Eslie Dimmitt of the interest in the B. W. Flinn estate vested in him by the sheriff's deed dated August 7, 1902. On July 21, 1906, Sarah Flinn executed a quit-claim deed to L. H. Flinn of all her

22 9 — 8

interest in the farm. L. H. Flinn then filed his bill in equity against Eslie Dimmitt, praying the court to cancel and set aside the execution, sale and sheriff's deed or to determine the amount due Eslie Dimmitt to enable him to redeem, and that upon payment thereof she be directed to convey to him the interest derived from Coley, and upon her failure or refusal the court should cancel the deed to her. Eslie Dimmitt answered the bill, and upon a hearing the court found the sum due on the Lusk and Doss judgments to be $397.15; that the said judgments were a lien on the interest of L. H. Flinn in the farm, and that upon payment of the same he was entitled to redeem. The court decreed payment of that amount, with interest at five per cent from July 20, 1906, within forty days from the date of the decree, and ordered that upon payment being made Eslie Dimmitt release and quit-claim her right in the premises, or on her default that the master in chancery execute such deed. A writ of error was sued out from this court and the record has been brought here for review.

At the sheriff's sale, property worth at that time as much as $3000 was sold for $75, which was a grossly inadequate price, and there were irregularities connected with the sale sufficient to set it aside. Where property susceptible of division is sold *en masse* without first offering it in separate parcels, and for an inadequate price, the sale will be set aside. (*Lurton* v. *Rodgers,* 139 Ill. 554.) It is not necessary to go further and consider the effect of the want of any showing on the justice's record that any oath was administered which authorized the issuing of the execution. Inadequacy of price and the manner in which the sale was conducted were clearly sufficient to authorize the court to set aside the sale and deed. The sale was to the attorney for the plaintiff in the execution, and he conceded the right of redemption from the sale upon condition that the amount justly due upon the claims which he held should be paid. Whether there was any *laches* on the part of Sarah Flinn or

L. H. Flinn is not a question in the case, since that question was waived by the agreement to permit a redemption and to make the quit-claim deed. Eslie Dimmitt knew all about the arrangement as well as the position and claim of Coley, and she took a deed of the interest of her brother in the property, which was worth $4000 at the time, in consideration of payment of the amount due on the two judgments against him. She does not occupy the position of an innocent purchaser for value and there is no equity whatever in her claim. The decree of the court against her was clearly right.

The decree of the circuit court is affirmed.

*Decree affirmed.*