## B. F. WARREN *vs.* LESLIE STINSON, *et al.*

Opinion filed November 19th, 1896.

**Execution Sales—Vacated for Inadequacy of Price.**

> While inadequacy of price will not warrant the setting aside of an execution sale for the reason that the opportunity to redeem affords the owner of the property full protection, yet, if he does not know of the sale, and is not chargable with knowledge thereof until the time for redemption has expired, gross inadequacy of price, coupled with unconscionable conduct on the part of the judgment creditor, will constitute a reason for annulling the sale when the judgment creditor buys the property at the sale, and the deed is executed and delivered to an assignee of the certificate of sale, who is not a *bona fide* purchaser, and who is cognizant of all the facts excusing the owner of the property from not knowing of the fact of sale in time to redeem.

**Fraud—Ignorance of Fact and Inadequate Price—Cause for Annulment of Execution Sale.**

> Plaintiff purchased real property on which a judgment was a lien. Defendant, as agent of the judgment creditor, The Altman & Taylor Company, called on him to pay the same. Both went to the former owner of the property, who was under obligation to pay the same as between plaintiff and himself. This former owner promised, in presence of plaintiff and defendant, the agent, to pay it. Plaintiff then departed, leaving the agent and the former owner together. Thereafter the judgment creditor, without notifying plaintiff that the judgment had not been paid, or that it intended to sell his land to satisfy the same, advertised and sold the land under execntion issued upon the judgment. On the sale the judgment creditor bought in the land, and thereafter assigned the certificate to the defendant. Plaintiff did not know of the sale until after the time for redemption had expired. None of the papers relating to the sale were placed on record until after the redemption period had expired. The land was sold for a grossly inadequate price. *Held*, that it was not error to set aside the sale.

**Failure to Secure Confirmation of Sale.**

> Failure to secure confirmation of an execution sale will not of itself warrant the setting aside of the sale. Whether a deed executed without confirmation of the sale is valid, not decided.

**Sale Confirmed Upon the Report Alone.**

> On an application to confirm an execution sale under § 5149, Comp. Laws, the court cannot look beyond the report of sale; and if such report on its face shows that the proceedings were regular, it is the duty of the court to confirm the sale. The application is *ex parte*, and nothing is before the court thereon except the report. No inquiry is to be made as to the facts outside of the report. The order of confirmation settles no question of fact or proposition of law as against the owner of the property sold.

**Action to Vacate Sale—When Proper.**

> While, as a general rule, the proper remedy to set aside an execution sale is by motion, yet under exceptional facts a bill in equity may be filed to accomplish this object. *Held*, that in this case a suit in equity was the proper remedy.

Appeal from District Court, Grand Forks County; *Templeton*, J.

Action by B. F. Warren against Leslie Stinson and others. From a judgment for plaintiff, defendants appeal.

Affirmed.

*Bangs & Fisk* and *Bosard & Burke*, for appellants.

This action will not lie. The appropriate remedy being a motion to set aside the sale and to vacate the order of confirmation. The proceedings not being void cannot be attacked collaterally. *Wilcox* v. *Raben*, 38 N. W. Rep. 844; *Morrow* v. *Moran*, 32 Pac. Rep. 770; *Neligh* v. *Keene*, 20 N. W. Rep. 277; *Willey* v. *Morrow*, 1 Wash. Ty. 474; 2 Freeman on Ex. 310; *Cassidy* v. *McDaniel*, 8 B. Mon. 519; *Prather* v. *Hill*, 36 Ill. 402; *Boles* v. *Johnston*, 23 Cal. 226; *Gould* v. *Mortimer*, 16 Abb. Pr. 448, 26 How. Pr. 167; *Brown* v. *Frost*, 10 Paige 246; *Moody* v. *Butler*, 63 Tex. 210; Van Fleet on Col. Att. 790.

There were no irregularities in the proceedings of the officer. The trial court found the sale irregular in that the property was not sold in parcels of 160 acres. 2 Freeman on Execut's § 296; *Power* v. *Larabee*, 3 N. D. 502. Under the statute, if all proceedings up to the time the order of confirmation is applied for were regular, the court has no discretion but must confirm the sale. § 5539 Rev. Codes; *Kahler* v. *Ball*, 83 Am. Dec. 451.

*Burke Corbet*, for respondent.

Respondent was not a party to the action in which the judgment was rendered and was not advised in any way of the sale of his land until the redemption period had expired. Under these circumstances it was proper to sue in equity to vacate the sale. *Williams* v. *Allison*, 33 Ia. 278; *Morris* v. *Roby*, 73 Ill. 462; *Fergus* v. *Woodworth*, 44 Ill. 374; *Cowan* v. *Underwood*, 16 Ill. 22; *Douthett* v. *Kettle*, 104 Ill. 356; Freeman on Ex. 310.

· The issuance of execution more than five years after the entry of judgment, without leave of court was irregular, §§ 5100, 5111, Comp Laws; *Marriner* v. *Coon*, 16 Wis. 465; *Jones* v. *Davis*, 23 Wis. 421. Inadequacy of price coupled with the other circumstances create a presumption that the sale was not fairly conducted, *Stocktons* v. *Owings*, 12 Am. Dec. 303; *Blights Heirs* v. *Tobin*, 18 Am. Dec. 220; *Crary* v. *Sprague*, 27 Am. Dec. 111; *Nesbitt* v. *Dallam*, 28 Am. Dec. 237; *Seaman* v. *Riggins*, 34 Am. Dec. 200; *Smith* v. *Randall*, 65 Am. Dec. 475, 6 Cal. 47; *Swires* v. *Brotherline*, 80 Am. Dec. 603; *Stone* v. *Day*, 5 Am. St. Repts. 17; *Smith* v. *Huntoon*, 134 Ill. 24; *Smith* v. *Perkins*, 26 Am. St. Repts. 794; *Weaver* v. *Nugent*, 13 Am. St. Repts. 799; *Burton* v. *Rogers*, 139 Ill. 554, 29 N. E. Rep. 866; *Kloeping* v. *Stellmacher*, 21 N. J. Eq. 328; *Seaman* v. *Riggins*, 1 Greens Ch. 214; *Howell* v. *Hester*, 3 Greens Ch. 266; *Wetzler* v. *Schaumann*, 24 N. J. Eq. 60. While inadequacy of price alone is not sufficient ground for setting aside a judicial sale. *Hunt* v. *Fisher*, 29 Fed. Rep. 801, inadequacy accompanied by fraud, oppression, or unfairness in the conduct of the sale, will cause its vacation. *Graffam* v. *Burgess*, 6 Sup. Ct. Rep. 686, 18 Fed. Rep. 251, 10 Fed. Rep. 216; *Fitzgerald* v. *Kelso*, 29 N. W. Rep. 943; *Neel* v. *Carson*, 2 S. W. Rep. 107; *Davis* v. *McGee*, 28 Fed. Rep. 867; *Carden* v. *Lane*, 2 S. W. Rep. 709; *Bean* v. *Hoffendorfer*, 2 S. W. Rep. 556.

CORLISS, J. The object of the action the judgment in which is before us for review was to set aside an execution sale and the proceedings subsequent to such sale. The facts do not appear to be in dispute. The premises in question consisted of two quarter sections of land, one of which was owned by H. Edward Anderson, against whom the Altman & Taylor Company held a judgment, and in the other one of which he had an undivided one-half interest. This judgment was a lien on Anderson's interest in these two parcels of real estate. The plaintiff, Warren, became the owner of this property, subject to this judgment. After he became such owner, execution was issued thereon, and under this execution the property was sold to the judgment creditors. The

sheriff appears to have made a report of sale to the court, and on the coming in of this report the following order was made: "On reading and filing the report of John O. Fadden, the sheriff of said county, the person who sold the premises, the property in said report mentioned and described, bearing the date the ———— day of ————, A. D. 1893, and on motion of James H. Bosard, attorney for the plaintiff, it is ordered that said report be, and the same is hereby, in all things confirmed." This order was made without notice to the defendant. This fact, however, as we shall see, is of no importance. After the year for redemption had expired, the sheriff executed and delivered to the defendant, the assignee of the sheriff's certificate of sale, a deed of the property in due form. The learned trial judge rendered judgment in favor of the plaintiff setting aside the sale, and filed a memorandum of the ground of his decision, from which it appears that he took the position that the order of confirmation was void, and that under our statute, to which we will shortly refer, sales under execution are in all respects assimilated to judicial sales, and that, therefore, an execution sale is not complete—is not a sale at all—until it has been confirmed by the court. Conceding, for the moment, the soundness of this view, we are unable to deduce from such premises the conclusion reached by the learned District Judge. The utmost that can be claimed is that the sale in question had not been confirmed. But it had not been set aside· And even if it be conceded that the sheriff has no power to execute a deed until an execution sale has been confirmed, it does not follow that because the deed is void the sale is a nullity. A purchaser at an execution sale secures by his purchase certain rights which the law will protect. The mere failure of the court to confirm the sale will not of itself divest him of those rights. It is true that if the facts show that the sale ought not to be confirmed, but should be set aside, then it is certainly proper to vacate the sale. We are therefore called upon to ascertain something more than the mere fact whether the sale has ever been confirmed. There can be no pretense that it was ever vacated

until the judgment in this case was rendered. That judgment cannot stand alone upon the proposition that the court had failed to approve the sale. It must rest upon the foundation that the sale itself was irregular or illegal. The inaction of the court on the subject of the legality of the sale cannot conclusively establish its invalidity. That must be affirmatively shown by other facts. One of the grounds relied on in this court to show that not only the deed, but the sale itself, should be annulled, is the failure of the sheriff to subdivide each of the two quarter sections, and sell such fragments in separate parcels. No such request was made at any time by the owner of the property, nor have we been able to discover any law which makes it the duty of a sheriff to subdivide a quarter section which is used as one tract, and sell it in separate parcels. However, we do not wish to settle this point in this case. We will merely discuss it. There is no pretense that either of these quarter sections consisted of several known lots or parcels in any other way than every quarter section may be said to consist of four 40-acre parcels or sixteen 10-acre purcels. There is no finding that either of these quarter sections of land consisted of several known lots or parcels. They were merely quarter sections of land, which we must assume, in the absence of any showing to the contrary, were used each as an entire tract. A quarter section is the recognized unit of farm lands in this country. It is in such tracts that the land is acquired from the government; and a sheriff, it would seem, is justified in selling it as one entire parcel, unless it consists of several known lots or parcels. They must be known lots or parcels, otherwise the officer has no guide to shape his course in putting up the land for sale. How minutely must he subdivide a section of land used as one farm,—for we must presume that it is one farm, in the absence of any showing to the contrary ? Must he sell in 40 or 10 acre tracts? If, notwithstanding the fact that a quarter section does not consist of several known lots or parcels, a court may set aside a sale because it imagines (for there is no possible certainty about it) that the land would have brought more if sold in 40-

acre tracts.   Persons will not bid at such sales.   Such rule might prove injurious, and not beneficial, to judgment debtors.   It is for this reason that the statute makes it the duty of the sheriff to sell in separate tracts only when the property consists of several known lots or parcels, and not when it is thought by the courts that the land would have brought more if offered in separate pieces.   The case before us is not one of the sale of more property than was necessary to satisfy the judgment.   The two pieces of land together brought only the amount of the judgment and the expenses of the sale.   That they may have been sold for an inadequate price is not of itself decisive.   We have practically held that for mere inadequacy of price the law ordinarily gives the owner ample redress by allowing him to redeem within a year after the sale.   *Power* v. *Larabee*, 3 N. D. 502–506, 57 N. W. Rep. 789.   The law places absolutely in his own hands a perfect remedy against the injustice of a sacrifice of his property.   The statute of redemption greatly enlarges his rights.   He is not compelled to move with dispatch to vacate the sale for fear that the delivery of the sheriff's deed (which follows close upon a sale where no time for redemption is allowed), and the sale of the land by the purchaser at the sale to an innocent purchaser will cut off his rights.   He may wait till the last day of redemption without jeoparding his interests.   Neither is he obliged to pray the favor of any court, to invoke its discretion, to throw himself on its indulgence with the risk, and, if there is no other element in the case, the practical certainty of defeat.   He can annul the sale by the simple act of redemption, which it is his absolute right to perform.   Moreover, the judgment debtor, under our statute, enjoys another advantage.   When such a debtor is driven to the necessity of moving to set aside a sale for inadequacy of price because there is no redemption law, he is compelled, if his motion is successful, to allow his property to be sold again; and, if a larger sum is bid on the second sale, he must, if he wishes to hold his property free from the lien of the judgment, pay a greater sum than he would have been obliged to pay to accomplish

this purpose could he have protected himself by proceeding under a redemption law such as ours is. He is, when his land is sold for an inadequate price, the beneficiary of a threefold indulgence: He has the absolute right to protect himself against injury; he has a whole year in which to proceed; he is better off when he redeems than he would have been had he been compelled to submit to a second sale; and he enjoys the peculiar advantage of discharging his property from the lien of the judgment by paying less than the property is worth. One thus favored by the law should be required to be vigilant in protecting his interests. Under ordinary circumstances he should not be heard to plead that he was ignorant of the fact of sale. Knowing that there is a judgment lien against his land, and that the creditor is under no legal obligation to notify him of a single step connected with the sale of his land under the judgment, he must be on the alert to ascertain whether his land has been or is about to be sold. Certainly, it is not a harsh rule which exacts of him such dilligence, such measure of business prudence, in looking after his own interests, as is involved in the not difficult task of discovering within a year of the day of sale that his property has been sold under the judgment, which he knows is a lien against it. He can always absolutely protect himself by paying the judgment; and if he does not pay it he at least knows that a sale may at any time take place, without his being personally notified of such fact. It is customary for the sheriff to make report of the sale, and the law contemplates that an order confirming such sale may be entered. These papers are ordinarily made matters of record about the time of the sale, and it is an almost invariable custom to record the certificate of sale issued at the time the sale is made. For these reasons we do not think that the owner may couple with mere inadequacy of price his own inattention to his personal affairs, resulting in the loss of the right to redeem, and on this basis build up an exception to the rule that inadequacy of price affords no ground for relief, because the debtor might have redeemed. He cannot lose this right of redemption through his

own want of diligence, and then urge its loss as a reason for taking his case out of the rule.

But there are other facts in this case which we think sufficient to excuse the plaintiff from the charge of inattention to his affairs in not knowing of the sale in question until after the time for redemption had expired. The plaintiff was not the judgment debtor. He merely purchased the land subject to the lien of the judgment. The court found that in May, 1893, the defendant, who was at the time the agent of the Altman & Taylor Company, the judgment creditor, called upon plaintiff for a settlement of the judgment; that plaintiff informed the defendant, as such agent, that a man named Cooper was to settle it, and see the land cleared of it, and that plaintiff took defendant to Cooper, and asked him if he would settle the judgment with defendant, and that Cooper replied that he would; that, therefore, plaintiff left the defendant with Cooper, and believed that the matter had been settled, and that, therefore, he gave it no further thought until he was notified of the sale. This notice he did not receive until after the time for redemption had expired. In connection with these facts it is important to note that neither the report of sale, nor the alleged order confirming the sale, nor the certificate of sale was placed on record until after the time to redeem had expired. Nor was plaintiff ever in any manner apprised of the sale by the judgment creditor or the denfendant until after if was too late for him to redeem. These papers were filed just before plaintiff was notified for the first time that he had lost his farm. It is now necessary to refer specifically to the extent of the inadequacy of the purchase price. The judgment was the first lien on both pieces of land. Each piece, the court finds, was worth $2,000. The judgment was a lien on only an undivided onehalf interest in one of these tracts. This one sold for $10. Such a price—$10—for property worth $1,000 is grossly inadequate. The judgment was a first lien upon the whole of the other section. This was worth $2,000. It sold for $251.15. This inadequacy is striking enough, but not so shocking as that with

respect to the other parcel. We would not, however, be inclined to hold that the court should have set aside the sale on this ground alone. But the other elements to which we have referred make out a case of surprise. In our opinion, the plaintiff, under the circumstances, was excusable for being ignorant of the fact that his land had been sold. The judgment creditor, after having witnessed, through its agent, the fact that plaintiff had left such agent with Cooper with the impression on the mind of the plaintiff that he would be no longer troubled by the judgment lien, we think that the judgment creditor owed him the duty of informing him of the intended sale, or that the sale had been made. The advertising the property for sale so soon after this conversation without any notice to the plaintiff, who, the judgment creditors knew, had a right to assume that the judgment would not be enforced against his land, and the failure to place any of these papers on record until after the time for redemption had expired, place the judgment creditor, which merely bought in the property for the amount of the judgment, and its agent, who, with knowledge of all the facts, took an assignment of the certificate, and subsequently the deed, in a position so unfavorable before the court that they should not be permitted to retain this property for, as to one piece, a greatly inadequate, and, as to the other piece, a grossly disproportioned, price. We do not have here the case of a sale originally to a stranger or the purchaser of the property from the judgment creditor by a *bona fide* purchase. The property was bid in by the judgment creditor. The certificate was afterwards assigned to the defendant, who was agent for the judgment creditor in connection with the collection and enforcement of this very judgment. The court finds as to the defendant that he was not a purchaser in good faith for value, and without notice, but that he took the assignment of the certificate with full notice of all the rights and equities of the plaintiff in the real estate sold, and succeeded only to the rights of the judgment creditor. If the land had been sold to a stranger, or if, after it had been bought in by the judgment creditor, an innocent pur-

chaser had secured the tittle, we might hesitate before giving the plaintiff relief as against such a purchaser. The standing of such a person would be much stronger than is the standing of the parties in this case, who bought knowing that, although plaintiff had reason to assume that his property would not be sold, they had not notified him that it would be sold, and who were responsible for witholding from the public records, where they properly belonged, the papers, the filing of which might have given him timely notice of the sale. We are fully aware of the general rule that mere inadequacy of price will not justify the setting aside of an execution sale. 2 Freem. Ex'ns. § 309, and case cited.

Nor is there anything in our decision in this case inconsistent with our ruling in *Power* v. *Larabee*, 3 N. D. 502, 57 N. W. Rep. 789. In that case we expressly qualified the rule that the right of redemption was a sufficient answer to a proceeding to set aside an execution sale for inadequacy of price by the statement that it applied to cases where the owner of the property had knowledge of the sale in time to redeem. We think ordinarily he is chargable with such knowledge from the fact that he knows that his property may be sold at any time without notice to him to enforce the lien of a judgment against it. The judgment creditor has a right to act on the theory that he will look after his own interest, and learn of the sale. But when the creditor knows that the owner assumes, and has reason to assume, that his property will not be sold under the judgment, he cannot, if he gives the owner no notice of the sale, or that he intends to sell, or has sold, urge that the debtor could have protected himself against loss from the sale of the property at a greatly inadequate figure by redeeming the same; and that, if he has lost his right of redemption through ignorance of the sale, it is his own fault. Of course, if this property had been bought by, or was now in the hands of, one who knew nothing of the belief of the plaintiff that his land would not be sold to pay the judgment, the case would be radically different. We might, in favor of such a person, even if he had bought at an inadequate price, hold that the owner was

careless in not ascertaining that the sale had been made in time to redem. That a stranger, ignorant of any irregularity in the sale, who buys at an execution sale, or a stranger who purchases in good faith from a judgment creditor who has bought, stands in a stronger position against an attack upon the sale than the judgment creditor himself, appears to be well recognized; and on principle such a distinction should be made. *Williams* v. *Doran*, 23 N. J. Eq. 385; *Newton's Heirs* v. *Bank*, 22 Ark. 19; *Carden* v. *Lane*, 48 Ark. 216, 2 S. W. Rep. 709. But such a case is not before us. Coupled with very great inadequacy of price, we have circumstances, as we have seen, excusing the plaintiff, as against the defendant, from not knowing of the sale in time to redeem; and to allow this valuable property, under these circumstances, to be swept from him for a paltry sum, would amount to a judicial sanction of a practical fraud. However free from intent to wrong the plaintiff the judgment creditor and the defendant may have been, we cannot shut our eyes to the fact that to insist upon holding this valuable property for this trifling sum is, under the peculiar circumstances of this case, unconscionable. That very slight circumstances justify the setting aside of an execution sale for inadequacy of price in cases where no question of an innocent purchaser is involved, is well settled. *Graffam* v. *Burgess*, 117 U. S. 180, 6 Sup. Ct. 686; *Kloepping* v. *Stellmacher*, 21 N. J. Eq. 328; *Howell* v. *Baker*, 4 Johns. Ch. 118, 2 Freem. Ex'ns. § 309; *Lurton* v. *Rodgers*, 139 Ill. 554, 29 N. E. Rep. 866. Mr. Freeman states the rule with as much precision as is possible in cases of this kind: "If the inadequacy can be connected with or shown to result from any mistake, accident, surprise, misconduct, fraud, or irregularity, the sale will generally be vacated, unless the complainant was himself in fault, or the rights of innocent third parties have become dependent on the sale." Section 309, vol. 2.

We think the action was brought in time. The sale was August 2, 1893. The time for statutory redemption therefore expired August 2, 1894. The plaintiff learned of the sale in September, 1894, and the action was brought early in November of the same

year. The court finds that at once, upon hearing of said sale, and prior to the commencement of this action, plaintiff dilligently endeavored to effect some settlement with said Leslie Stinson, whereby plaintiff would be permitted to pay up and redeem said lands from said sale and sheriff's deed, and that Stinson declined to make any such arrangement, and his attorney, J. H. Bosard, told plaintiff that any such arrangement was impossible. These circumstances do not disclose any laches on the part of plaintiff. It is true that a court of equity may deny relief in these cases, although the action is brought before it is barred by statute. Mr. Freeman says: "Before the statute of limitations interposes any positive bar to the maintenance of a suit to vacate a sale, the court may decline to proceed because of the laches of the complainant. These laches may be fatal to the suit, either because the long delay indicates that the complainant acquieced in or tacitly ratified the sale, or because it has resulted in the purchaser conveying or improving the property, or so altering his condition in other respects that the vacation of the sale is manifestly inequitable." 2 Freem. Ex'ns. § 307a. See, also, § 307; *Lurton* v. *Rodgers*, 139 Ill. 554, 29 N. E. Rep. 866. We do not wish to be understood as holding that mere ignorance of the sale, which can be excused only by showing that the owner of the property was inattentive to his interests, would alone warrant a court in allowing him to obtain annullment of the sale after the redemption period had expired. We limit our ruling to the facts of this case. Under these facts we are clear that the action was commenced in time.

The question of the proper remedy remains for solution. We agree with counsel for defendant that an execution sale cannot be collaterally attacked. But a direct action to set it aside is not a collateral attack. It is as much a direct attack as a motion would be. Nor do we think that under the facts of this case the plaintiff was necessarily driven to a motion in the original action in which the property was sold. We do not wish to be understood as departing from the views expounded by Judge Wallin

in *Power* v. *Larabee*, 3 N. D. 502-512, 57 N. W. Rep. 789. In our judgment, the sound rule is that a party who desired to set aside an execution sale should ordinarily proceed by motion. But this rule is by no means inflexible. Cases will sometimes arise where the person who desires to overthrow the sale may be compelled to resort to an action to secure full redress. When the question is one of mere irregularity, and the steps to set aside the sale are taken before a deed has been delivered, the remedy by motion would seem to be adequate, and hence there would be no reason for invoking the extraordinary jurisdiction of a court of equity. But this case presents other features. The plaintiff was not a party to the action in which the sale was made, nor had he made himself a party in the sense that a purchaser at such a sale makes himself a party. A sheriff's deed had been delivered. The person who held the tittle was not the judgment creditor, but one who might possibly claim to be an innocent purchaser, and whose rights could not, therefore, be fully gone into on a motion heard and decided on affidavits. The plaintiff was compelled to excuse his long delay in attacking the sale, and this question could not be as satisfactorily investigated on the hearing of a motion as on the trial of a suit in equity. While, in many cases, a motion will prove an adequate remedy, yet we think that a court of equity should be very careful not to refuse to take jurisdiction in these cases, lest by driving the parties to a motion a full and fair investigation into the facts be prevented. That the party should proceed by motion in some cases, we have no doubt. See 2 Freem. Ex'ns. § 310. But such a case is not before us. That the learned trial judge sitting as a chancellor was justified in taking jurisdiction of this action under its peculiar facts, we have no doubt. It would have been error for him to have compelled the plaintiff to resort to a motion for relief. See Id.; *Lurton* v. *Rodgers*, 139 Ill., 554, 29 N. E. Rep. 866; *Graffam* v. *Burgess*, 117 U. S. 180, 6 Sup. Ct. 686.

The court did not set aside the sale, but allowed the plaintiff to

redeem. While it is true it is illogical to adjudge a sale to be open to attack, and yet render judgment allowing redemption on the theory of a valid sale, yet this case does not present such a feature. The court, having power to set aside the sale, might, in view of the fact that on plaintiff's own showing the property was sure to bring enough to pay the judgment and expense of sale, give both parties, by its decree, all that they could hope to secure should a sale of the property be ordered. See *Lurton* v. *Rodgers*, 139 Ill., 554, 29 N. E. Rep. 866. If the plaintiff, under the decree which has been rendered, sees fit to redeem, he will secure his property on paying the judgment and expenses; the defendant will be repaid what he has expended; the judgment creditors will be allowed to hold the amount of their judgment received by them from the defendant on the purchase by him of the certificate of sale.

We gather from the argument of counsel for the defendant that it is claimed that the sale has been confirmed, and that, therefore, it is not open to attack. The alleged order of confirmation does not, in terms, confirm the sale. It merely confirms the report of the sale. Nor does it contain the provisions required by § 5149 of the Compiled Laws ( § 5539, Rev. Codes.) It does not, in terms, direct the clerk to make an entry in the journal that the court is satisfied with the legality of the sale, nor does it contain any direction that the sheriff execute to the purchaser a deed of the property. Without passing on the sufficiency of this order as an order of confirmation of sale under the sale, we will assume it to be sufficient. This assumption, however, does not bring us to an agreement with the contention of counsel for defendant. Our statutory order of confirmation of an execution sale has an entirely different effect from a common-law order of confirmation of a judicial sale. Orders belonging to the latter class are made after notice to all parties, and a full hearing of all matters which can in any way affect the legality of the sale. So far as the court has power, on a motion to confirm a judicial sale, to inquire into its legality, the order of confirmation is conclusive on all parties,

because they are all given timely notice of the motion, and an opportunity to be heard thereon. But § 5149, Comp. Laws, does not contemplate any notice to any one, or any hearing as to facts. It provides as follows: "If the court upon the return of any writ of execution, for the satisfaction of which any real property or interest therein has been sold, shall, after having carefully examined the proceedings of the officer, be satisfied that the sale has, in all respects, been made in confirmity to the provisions of this chapter, the court must make an order confirming the sale and directing the clerk to make an entry on the journal, that the court is satisfied of the legality of such sale, and an order that the officer make to the purchaser a deed of such real property, or interest therein, at the expiration of one year from the day of sale unless the same be redeemed as herein provided. And the officer after making such sale may retain the purchase money in his hands until the court shall have examined his proceedings, as aforesaid, when he must pay the same to the person entitled thereto by order of the court." It is apparent from the language of this statute that the court proceeds *ex parte*, and that the utmost scope of its inquiry is to ascertain whether the report of the sheriff shows upon its face that the sale has in all respects been made in conformity to the provisions of that chapter. All the decisions are in harmony on this question under identical statutes. *Buckingham* v. *Society*, 2 Ohio, 360; *Williams* v. *Norton*, 3 Kan. 290; *Challiss* v. *Wise*, 2 Kan. 193; *White-Crow* v. *White-Wing*, 3 Kan. 276; *Koehler* v. *Ball*, 2 Kan. 160; *Rice* v. *Poynter*, 15 Kan. 263; 2 Freem. Ex'ns. § § 311, 3041. Such an *ex parte* adjudication can bind no one. Certainly it cannot bind the owner of the property, even as to the facts which are set forth in the report, for he has no chance to be heard upon the application to confirm the sale, nor is he given any notice that the application is to be made. Moreover, if he should appear before the court, and offer evidence to show that the report was false, the court would have no power to hear him on that point on the mere application under the statute to confirm the sale. The distinction we have

made is clearly stated by Mr. Freeman in his work on Executions: "In acting upon a report of sale, the court doubtless acts judicially; and in most of the states it does not proceed until notice has been given to all the parties interested in the sale. There therefore exists every reason for giving to decrees of confirmation the effect of final adjudications of all the questions in fact considered and decided, and also of all the questions which the parties ought to have presented for consideration and decision. But their effect as *res adjudicata* is not so conclusive and comprehensive as we might reasonably expect. In Kansas they are entered *ex parte*, and that fact abundantly justifies the court in restricting their effect, and in holding that they amount to no more than a decision that the proceedings, as shown in the return, are not such as require the disapproval of the sale. Upon principle, we do not understand that they can there be given a conclusive effect upon any question whatever, because they lack the essential element of judicial authority, to-wit: notice to the party whose rights are sought to be adjudged. Elsewhere, because made after notice given to the parties in interest, they are conceded a much greater effect." But, even if the defendant had been entitled to and had received notice of the application to confirm the sale, and had also appeared, and had been allowed to contest all questions of fact touching the inquiry whether the sale had been made in conflict with the provisions of the chapter named, yet the order of confirmation entered under these circumstances would not have precluded the investigation here sought to be made. The grounds on which we hold that the sale should be set aside are grounds which a sheriff's report of sale never discloses. Such report in no manner sheds any light on the question whether the property was sold for an adequate price. Nor could the report ever contain any reference to the fact whether the owner of the property had been so misled as to be excusable in not knowing of the sale in time to protect his interests. If, on the application to confirm, the owner of the property could be heard on all matters which the law contemplates shall be embodied in the sheriff's report,

still the order of confirmation would settle no other question of fact or proposition of law. On this branch the case of *Jackson* v. *Ludeling*, 21 Wall. 616–633, is directly in point. In our judgment, § 5149, Comp. Laws, was passed for the protection of judgment debtors. Sales irregularly conducted are not void, and often-times the debtor finds that his application to set aside an irreg-ular sale comes too late, because, through inattention to his affairs, he has been guilty of laches. The purpose of this section is to protect debtors against such consequences by rendering it impossible for an irregular sale to be confirmed, and so made effectual, if the sheriff reports the facts as they are, and the judge correctly interprets and applies the law. It is the duty of the court, if on the mere inspection of the report of sale the irregularity is made apparent, to set aside the sale without any application to that effect from the debtor, and without the necessity of his being heard. Section 5142, subd. 2, Comp. Laws, in terms declares that all execution sales made without notice, as provided in that sec-tion, must be set aside by the court to which the execution is returnable upon motion to confirm the sale. We also think that the statute has another purpose. It has been held by some courts that when a stranger purchases at an execution sale he is not pre-judiced by irregularities of which he had no notice, and for which he was not responsible. Under our statute the stranger who purchases must take his chances of the sale having been so con-ducted that the court will not confirm the sale. It is obvious that this section can have no other purpose, for an order of confirmation made under it is in no way binding upon the debtor as against a direct attack upon the sale by him. It is purely an *ex parte* order, which embodies no more than the decision of the court that on the face of the return it appears that in certain respects the sale was regular. The soundness of the court's law, and the truth of the facts set forth in the report, may thereafter be contested by the debtor in proper proceedings.

We have not deemed it necessary to pass on the very interest-ing question whether a deed executed without any confirmation

of an execution sale is void. For the reasons set forth in this opinion, the judgment of the District Court is affirmed. All concur.