## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT

### OF

# NORTH DAKOTA

HARRY PAST v. HENRY RENNIER and V. J. Wilmart (in Business under the Firm Name of Rennier & Wilmart), W. B. S. Trimble Company, a Corporation, and J. P. Duffey.

### (151 N. W. 763.)

Plaintiff executed a first mortgage to one R. J. Trimble for $4,000 upon twelve and one-half lots. The defendants R. & W. obtained a judgment for $77.20, which became a second lien on the premises. R. & W. obtained an execution and levied upon five of said lots. At the execution sale the defendant Trimble & Company became the purchaser, and after the expiration of the year obtained sheriff's deed. This action is to set aside said sheriff's deed and for permission to redeem therefrom upon the grounds set forth in the complaint.

**Mortgage — judgment — execution sale — sheriff's deed — action to set aside — evidence — bids — inadequacy of price.**

1. Evidence examined, and shows that the five lots purchased by the Trimble Company were covered by the first mortgage of $4,000, accrued interest, taxes, and insurance, leaving an equity not exceeding $5,000 in the entire property. Conceding that the equity in those lots was from $1,000 to $2,000, such fact would not show an inadequacy of price which would throw suspicion upon the purchaser at the sale. Trimble & Company was not the original judg-

30 N. D.—1.

ment debtor, but bought the tracts as a speculation. There was no obligation upon it to bid a larger sum.

**Sheriff's deed — action to set aside — service of execution — levy — actual notice of — evidence — sheriff's amended return.**

2. The second ground upon which appellant seeks to set aside said sheriff's deed is that no service of execution of the levy was made upon plaintiff, Past. The evidence, however, shows that Past had actual notice of such levy. The sheriff's amended return was properly received in this case.

**Interested parties — lien holders — conspiracy between.**

3. The third attack upon the deed is upon the grounds that certain conduct of the Trimble Company was unfair, and that, in fact, a conspiracy existed between R. & W. and the Trimble Company to plunder Past's equities. Evidence examined, and *held*, insufficient to establish the conspiracy or fraud alleged.

**Plaintiff — delay in bringing action — laches.**

4. Plaintiff is guilty of laches in bringing his action.

**First mortgage foreclosure — plaintiff made no redemption — title lost — judgment — affirmance.**

5. Plaintiff made no redemption from a foreclosure of the first mortgage, and has therefore lost title to the lots irrespective of the outcome of this suit. This is an additional ground for the affirmance of judgment.

Opinion filed February 5, 1915. Rehearing denied March 15, 1915.

Appeal from the District Court of Stutsman County, *Coffey,* J. Affirmed.

*S. E. Ellsworth,* for appellant.

By foreclosure of mortgage, title passes from the mortgagor to the purchaser, but subject to the right of creditors of the mortgagor to enforce their liens upon it. The senior creditor, in the order and under the conditions prescribed by statute, by paying to the purchaser the purchase price, with interest, may redeem and become subrogated to his rights, and so on,—the last redemptioner becoming the owner in fee. The object of the statute is to have the property applied as far as it may or can be, in satisfaction of the debts of the mortgagor. Sprague v. Martin, 29 Minn. 226, 13 N. W. 34.

The purpose of redemption is to insure to the debtor and to his creditors the full value of the debtor's property. Lysinger v. Hayer, 87 Iowa, 335, 54 N. W. 145.

The sale was for an inadequate price. We recognize the rule that inadequacy of price is insufficient to warrant the setting aside of a judicial sale; but it is a circumstance which the courts will regard with great suspicion; and in cases where it appears, slight additional circumstances only are required to authorize the setting aside of the sale. Dewey v. Linscott, 20 Kan. 684; Pickett v. Pickett, 31 Kan. 727, 3 Pac. 549; Capital Bank v. Huntoon, 35 Kan. 577, 11 Pac. 369; Freeman, Executions, §§ 304, 308, 309; Jones v. Carr, 41 Kan. 329, 21 Pac. 258; Means v. Rosevear, 42 Kan. 377, 22 Pac. 319; Schroeder v. Young, 161 U. S. 334, 40 L. ed. 721, 16 Sup. Ct. Rep. 512; Graffam v. Burgess, 117 U. S. 180, 29 L. ed. 839, 6 Sup. Ct. Rep. 686; Hedlin v. Lee, 21 N. D. 495, 131 N. W. 390; O'Donnell v. Lindsay, 7 Jones & S. 523; King v. Platt, 37 N. Y. 155; Griffith v. Hadley, 10 Bosw. 588; Dwight's Case, 15 Abb. Pr. 259; King v. Morris, 2 Abb. Pr. 296; Francis v. Church, Clarke, Ch. 475; Gardiner v. Schermerhorn, Clarke, Ch. 105; Hoppock v. Conklin, 4 Sandf. Ch. 582; May v. May, 11 Paige, 203; Brown v. Frost, 10 Paige, 245; Requa v. Rea, 2 Paige, 340; Williamson v. Dale, 3 Johns. Ch. 292; Lansing v. M'Pherson, 3 Johns. Ch. 427; Billington v. Forbes, 10 Paige, 487; Mulks v. Allen, 12 Wend. 253; Ontario Bank v. Lansing, 2 Wend. 261; Stacy v. Smith, 9 S. D. 137, 68 N. W. 198.

Where the return of sale by the sheriff is faulty, and fails to show that notice of sale for the time and in the manner required by law was given, the irregularity is not cured by the printer's accompanying affidavit showing the facts omitted from the return. Where the same is made at an entirely inadequate price, it is error to confirm it on such a defective return. Evans v. Bushnell, 59 Kan. 160, 52 Pac. 419; Jones v. Carr, 41 Kan. 329, 21 Pac. 258; Graffam v. Burgess, 117 U. S. 180, 29 L. ed. 839, 6 Sup. Ct. Rep. 686; Schroeder v. Young, 161 U. S. 334, 40 L. ed. 721, 16 Sup. Ct. Rep. 512.

Where there is gross inadequacy of price combined with fraud or mistake, or any other ground of equity relief in equity, it will incline the court strongly to afford relief. There was conspiracy in this case and a want of good faith and fair dealing. Kloepping v. Stellmacher, 21 N. J. Eq. 328; Hedlin v. Lee, 21 N. D. 495, 131 N. W. 390; Stacy v. Smith, 9 S. D. 137, 68 N. W. 198; Folsom v. Norton, 19 N. D. 722, 125 N. W. 310.

The rents and profits of property received by purchasers at a judicial sale where the price paid was grossly inadequate, and there were other circumstances of fraud or irregularity, should furnish a redemption fund to the extent to which they are received, and should be so applied if a redemption is made. Folsom v. Norton, 19 N. D. 722, 125 N. W. 310.

Rents received from the purchaser's own tenants are not included in the terms of the statute. This fact does not deprive the mortgagor of the right to have them allowed as credits if he redeems. Little v. Worner, 11 N. D. 382, 92 N. W. 456.

Under the circumstances of this case, the court has equitable jurisdiction, even if the time for redemption has expired. Graffam v. Burgess, 117 U. S. 180, 29 L. ed. 839, 6 Sup. Ct. Rep. 686; Blight v. Tobin, 7 T. B. Mon. 612; Day v. Graham, 6 Ill. 436; Morris v. Robey, 73 Ill. 462; Fergus v. Woodworth, 44 Ill. 374; Bullen v. Dawson, 139 Ill. 633, 29 N. E. 1038; Jenkins v. Merriweather, 109 Ill. 647; State Bank v. Noland, 13 Ark. ·299; Schroeder v. Young, 161 U. S. 334, 40 L. ed. 721, 16 Sup. Ct. Rep. 512.

The owner is not required to pay the amount of the purchase when the purchaser has been in possession and committed waste. Harrison v. Wyse, 24 Conn. 1, 63 Am. Dec. 151; Anson v. Anson, 20 Iowa, 55, 89 Am. Dec. 514; Meigs v. McFarlan, 72 Mich. 194, 40 N. W. 246; Swegle v. Belle, 20 Or. 323, 25 Pac. 633.

If the mortgagee personally retains the property, he will br chargeable upon the accounting with the reasonable value of the use and occupation for the period. 27 Cyc. 431, and cases cited under note 34; Comstock v. Michael, 17 Neb. 288, 22 N. W. 549.

Whatever evidential force the sheriff's return was entitled to was lost by the amendment. While facts stated by a public officer in the course of his official duty are entitled to weight, yet those written down by him after a lapse of years, for the purpose of making evidence, are. of no value. Evans v. Bushnell, 59 Kan. 160, 52 Pac. 419; Paul v. Slason, 22 Vt. 231, 54 Am. Dec. 75.

*Carr & Kneeland* and *Thorpe & Chase,* for respondents.

The sale made under the judgment and execution was legal, regular, and valid in all respects. Where defendant knows of the sale, and has a fair opportunity to redeem, he cannot have the sale set aside

because of inadequacy of price, as the redemption right affords him ample protection against a sacrifice of his property. Power v. Larabee, 3 N. D. 502, 44 Am. St. Rep. 577, 57 N. W. 789; Warren v. Stinson, 6 N. D. 293, 70 N. W. 279; First Nat. Bank v. Black Hills Fair Asso. 2 S. D. 145, 48 N. W. 852; Coolbaugh v. Roemer, 32 Minn. 445, 21 N. W. 472; Sigerson v. Sigerson, 71 Iowa, 476, 32 N. W. 462; Lehner v. Loomis, 83 Iowa, 416, 49 N. W. 1018.

The price for which the property sold, as compared with its real value, was little more than nominal, and there was no irregularity or defect in the sale. Mere inadequacy of price is not sufficient ground for attacking the sale. Peterson v. Little, 74 Iowa, 223, 37 N. W. 169; Sheppard v. Messenger, 107 Iowa, 717, 77 N. W. 515; Griffith v. Milwaukee Harvester Co. 92 Iowa, 634, 54 Am. St. Rep. 573, 61 N. W. 243; Brittin v. Handy, 20 Ark. 381, 73 Am. Dec. 497; Hardy v. Heard, 15 Ark. 184; Carden v. Lane, 48 Ark. 216, 3 Am. St. Rep. 228, 2 S. W. 709; Van Dyke v. Martin, 53 Ga. 221; Noyes v. True, 23 Ill. 503; McMullen v. Gable, 47 Ill. 67; Chouteau v. Nuckolls, 20 Mo. 442; Hart v. Bleight, 3 T. B. Mon. 273; Den ex dem. Flommerfelt v. Zellers, 7 N. J. L. 153; Murphy v. M'Cleary, 3 Yeates, 405; Union Bank v. Bertolet, 1 Woodw. Dec. 88; Agricultural, Mechanical & Blood-Stock Asso. v. Brewster, 51 Tex. 257; Clark v. Chapman, 98 Cal. 110, 32 Pac. 812, 33 Pac. 750; Doe ex dem. Weirick v. Ross, 2 Ind. 99; Kerr v. Haverstick, 94 Ind. 178; Cavender v. Smith, 1 Iowa, 306; Weber v. Weitling, 18 N. J. Eq. 441; Watt v. McGalliard, 67 Ill. 513; Johnson v. Dorsey, 7 Gill. 269.

The law does not require the sheriff to serve notice or copy of the execution upon the judgment debtor. He knew that there was a judgment lien upon his land, and the creditor is not required to notify him of a single step connected with the sale of his land under execution. Warren v. Stinson, 6 N. D. 293, 70 N. W. 279; Power v. Larabee, 3 N. D. 502, 44 Am. St. Rep. 577, 57 N. W. 789; 17 Cyc. 1097, 1098, "Notice of Levy."

In the confirmation of a sale, our statute contemplates a mere *ex parte* proceeding before the court, based upon the officer's return of sale, and settles no question of fact. Warren v. Stinson, 6 N. D. 293, 70 N. W. 279; Hershy v. Latham, 42 Ark. 305.

There must be a period after which execution sale will not be dis-

turbed. The plaintiff has been guilty of such laches as to preclude him from a recovery. 2 Freeman, Executions, § 307a; Warren v. Stinson, supra; Baxter v. O'Leary, 10 S. D. 150, 66 Am. St. Rep. 702, 72 N. W. 91; Dickinson v. Johnson, 161 Iowa, 252, 142 N. W. 407.

The right of the owner of real estate to redeem same from sale under execution is purely statutory, and he must bring himself within its terms. Gosmunt v. Gloe, 55 Neb. 709, 76 N. W. 424; 17 Cyc. 1278, subdiv. h, 1324, title, Redemptions; Noyes v. True, 23 Ill. 503; 21 Century Dig.

There is a defect of parties defendant in this action, and a full determination of the rights of all the parties cannot be had. The owner of two of the parcels of property is not before the court. McDougald v. New Richmond Roller Mills Co. 125 Wis. 121, 103 N. W. 244.

The sheriff had the right to amend his return, and the court had the right to allow and receive such amended return. Mills v. Howland, 2 N. D. 30, 49 N. W. 413; Malone v. Samuel, 3 A. K. Marsh. 350, 13 Am. Dec. 173; 17 Cyc. 1373–1375, 1385; O'Brien v. Gaslin, 20 Neb. 347, 30 N. W. 274; 18 Enc. Pl. & Pr. 950.

In any event this is a collateral attack, and the return is conclusive against it. 18 Enc. Pl. & Pr. 963, 985; 17 Cyc. 1366(b), 1382; Symonds v. Harris, 51 Me. 14, 81 Am. Dec. 553; Whittier v. Varney, 10 N. H. 291; Mills v. Howland, 2 N. D. 30, 49 N. W. 413; Ingram v. Belk, 2 Strobh. L. 207, 47 Am. Dec. 591; Humphry v. Beeson, 1 G. Greene, 199, 48 Am. Dec. 370; Drake v. Hale, 38 Mo. 346.

Where a sheriff states in his return that he "levied," it is sufficient, without stating the facts or acts done. Further title of a purchaser at execution sale does not depend upon the officer's return. Byer v. Etnyre, 2 Gill, 150, 41 Am. Dec. 410; Tullis v. Brawley, 3 Minn. 277, Gil. 191; Rohrer v. Turrill, 4 Minn. 407, Gil. 309; Folsom v. Carli. 5 Minn. 333, Gil. 264, 80 Am. Dec. 429; Hutchins v. Carver County, 16 Minn. 16, Gil. 1; 17 Cyc. 1370, (b), 1378, 1382; Millis v. Lombard, 32 Minn. 259, 20 N. W. 187; Marin v. Potter, 15 N. D. 284, 107 N. W. 970; Matchett v. Liebig, 20 S. D. 169, 105 N. W. 170; Burton v. Cooley, 22 S. D. 515, 118 N. W. 1028.

Burke, J. The facts in this case were somewhat complicated and pretty largely in dispute. In stating the same, we give all the undisputed facts and some of the minor disputed ones, which are decided without setting forth the evidence or our reasoning therefor, but the major disputes will be treated later. On December 27, 1907, plaintiff, Past, was the owner of twelve and one-half lots situated in the city of Jamestown, and mostly improved property. Upon that date, he and his wife executed a mortgage upon said property to one R. J. Trimble securing the payment of $4,000. This loan was negotiated by the defendant W. B. S. Trimble Company, a corporation whose president was a brother of the mortgagee. This mortgage was later foreclosed, and plays a minor part in the controversy. February 8, 1908, the firm of Rennier & Wilmart obtained a judgment against Past for the sum of $77.20, which was duly docketed in the office of the clerk of the district court for said county on February 20, 1908, thus becoming a second lien upon all of said premises. Thereafter, Past and his wife gave a second mortgage upon all of said premises to the Farmers' & Merchants Bank of Jamestown to secure the sum of $1,400, which mortgage was later assigned to one Toay. This mortgage was a third lien upon the land, and was likewise foreclosed later, and also has a slight bearing on the issue. There are other judgment creditors (Toay with a $770 judgment) whom we do not believe it necessary to mention in particular, whose liens are inferior to the three mentioned.

The lien with which we are most concerned was the one represented by the judgment of Rennier & Wilmart. After obtaining two executions which were returned unsatisfied, a third and last execution was issued and passed in the hands of the sheriff, and levy and sale made of five of the lots covered by the Trimble Company mortgage. Those five lots are for convenience placed in three groups: one, lot 2, block 35, Jamestown, is known as the feed mill property; lots 13 and 14, block 23, Lloyd's Second Addition to Jamestown, will be hereinafter referred to as the Mell property; and lots one and two, block 25, Lloyd's Second Addition, will be mentioned as the Sappenfield property. Upon the sale of this property under such execution, each of said tracts was separately offered for sale, and no bids being received therefor the three tracts were offered together, whereupon the W. B. S. Trimble

Company made a bid of $119.25, which was the exact amount necessary to satisfy said judgment and costs. This sale took place on the 22d of June, 1909. No redemption was made from this sale, and on the 23d of June, 1910, the Trimble Company applied for and received a sheriff's deed to the three tracts aforesaid, and on the same day recorded it with the register of deeds of said county. They thus became the owner of all of the interest of said plaintiff in said tracts, subject only to the $4,000 mortgage aforesaid, unless plaintiff is able to establish his attack upon said sheriff's deed, which will be treated later. The case was tried in the court below which resulted in findings of fact and conclusions of law adverse to the plaintiff, and he has appealed to this court demanding a trial *de novo*. Plaintiff states his position in his brief as follows: "The grounds of attack by plaintiff upon the sheriff's deed issued to the defendants, W. B. S. Trimble Company, on June 23, 1910, are: (1) That the price for which the property was bid in by the Trimble Company at the sale was, in comparison with the actual value of the property, so grossly inadequate as to call for strict scrutiny of all proceedings leading up to, connected with, or following the sale; (2) that actual notice of the levy of the execution upon the property of the plaintiff, Past, was not given, and he did not know the property had been sold until a considerable time after the sheriff's deed had been issued to the Trimble Company, this failure of notice resulting from the omission of the sheriff of Stutsman county to comply with his statutory duty of serving the plaintiff, Past, an execution debtor, with a copy of the execution and a notice of levy upon the property, and to serve the tenants occupying the different parcels of property with notice of levy; (3) fraud and collusion betwen the judgment creditors, Rennier & Wil mart, and the Trimble Company, the purchasers at the sale, with the end and purpose not of realizing the amount due upon the judgment, but of obtaining title by sheriff's deed to plaintiff's property." We will consider those three attacks in the order mentioned.

(1) Appellant says: "While, under the great current of modern authority, inadequacy in price, however gross, in itself, is insufficient to warrant setting aside of a judicial sale, it is by universal holding a circumstance which courts will always regard with suspicion; and in cases where it appears, slight additional circumstances only are

required to authorize the setting aside of the sale." This seems a fair statement of the rule, and we will examine the facts in this case to determine whether or not there was such inadequacy of price that would throw suspicion upon the defendants' conduct. As already stated, the three tracts sold to Trimble Company were covered by a $4,000 mortgage which necessarily was superior to the title acquired by the purchaser. True, this mortgage was also secured by seven and one-half other lots, but it would require care to prevent the mortgagee from throwing an unjust proportion of said encumbrance against the lots in question. Under those circumstances, the purchaser might have the possibility thrust upon him of paying nearly the entire encumbrance of $4,000 from those three tracts. There is no satisfactory testimony as to the market value of these three tracts, but a circumstance occurred which gives us some idea thereof. Toay, the assignee of the second mortgage, made an attempt to buy the interest of J. R. Trimble and the Trimble Company in the entire property covering the twelve and one-half lots. At that time Mr. Trimble told him that their mortgage with interest, taxes and insurance, together with the amount they had invested in the execution sale title, amounted to $6,300, and that he would assign the entire amount to him for a bonus of $2,000, which would mean that he was willing to transfer what rights and interests they had in the entire tract, including the first mortgage, for $8,300, and that he believed Toay would buy at that figure, and Mr. Toay refused this offer, but offered them $1,000, which would make the entire property worth, in his judgment, something over $7,300. Referring to the offer of Trimble, Toay says: "I was not willing to pay that sum. There would be nothing left for me at that figure. At that time I told Mr. McElroy that he was too high. I am positive as to the date of this conversation. It was along in the latter part of the year, about the first part of November, 1910." Plaintiff himself testifies that the mill property was worth $2,500, the Mell property $1,500; and the Sappenfield property, $1,600, this of course, subject to the $4,000 mortgage. There is some other testimony, but none place the price so high as the plaintiff himself. For the purpose of this argument, we may assume that there was an equity in the three tracts sold upon execution after apportioning to them a fair share of the first mortgage, of, say, $1,000 to

$2,000, the value placed on it by Toay. However, taking into consideration the size of the first mortgage with interest, taxes, and insurance, and the obvious fact that it might be inequitably apportioned, we do not believe there is such gross inadequacy in the bid as tends to show irregularity in the sale. It seems to us that no person could safely make a bid of even the $119.80 for this equity unless he were prepared to take up the first mortgage, or was at least assured of friendly co-operation by its owner. This conclusion is re-enforced by the fact that two prior executions upon this judgment had been returned unsatisfied, it being evident that Rennier & Wilmart preferred to keep the lien of their judgment to a purchase of the equity.

Trimble Company were not the judgment creditors. They bought the tracts merely as a speculation, and we know of no rule of law which required them to pay any fancy prices for the tracts, nor can we see how any improper motives can be attributed to them for failing to bid more than the amount necessary to secure the tracts against competitive bidding. In this case, their bid of $119.80 was the highest and best bid, and obtained for them the property. Even if Rennier & Wilmart had bid in the property themselves, there would be no obligation upon their part to bid a larger sum (Warren v. Stinson, 6 N. D. 293, 70 N. W. 279), and certainly a stranger bidding for speculative purposes only was under no such obligation. Thus, under all the circumstances of this case, we do not see that it can be fairly said that the inadequacy of the price tended in any manner to destroy the good faith of the purchase.

(2) Taking up the second grounds advanced by appellant, to wit, that there was no service of the execution and notice of levy upon plaintiff or his tenants. In the trial below, plaintiff testified that he had received no copy of such papers, but this evidence was objected to as being a collateral attack on a return in another case. Defendant introduced in evidence the amended sheriff's return in the case of Rennier v. Past, wherein the sheriff in due form certified that he had served such papers upon defendant Harry Past, personally, on the 27th of May, 1909, and had likewise served notice upon the persons who were then occupying certain lots. This return was objected to by plaintiff for the reason that it was an amendment of the original return made three years after the proceedings. It appears that the

amended return had been made pursuant to an order of the district court in the former case after notice and upon hearing, and upon due proof by affidavit of the facts therein stated. It is evident that the amended return must be accepted as proper proof in the case at bar. If it is not a correct statement of what occurred, application to strike it from the files should have been made in the proper case, where the parties interested would have notice and an opportunity to litigate that question. It is obviously unfair to attack a return of one case when it is offered in evidence in another. There are many circumstances in the record corroborating the statement of the sheriff that Past was personally served. For instance, the return of the sheriff upon the second execution contains the following statement: "That, relying upon the promise of the defendant (Past) to pay the amount of this execution, I did not make a levy upon real property at once." This return was offered in evidence by the plaintiff himself. Plaintiff further testifies that after this sale his tenants refused to pay him any rent, and told him that they had been notified by the Trimble Company to pay him nothing further. Further, plaintiff testifies that thereupon he went to see an attorney about the matter at that time, and gives the conversation had with the attorney in detail. Upon a similar situation, this court in Warren v. Stinson, 6 N. D. 293, 70 N. W. 279, says: "Under ordinary circumstances, he should not be heard to plead that he was ignorant of the fact of sale, knowing that there is a judgment lien against his land, and that the creditor is under no legal obligation to notify him of a single step connected with the sale of his land under the judgment. He must be on the alert to ascertain whether his land has been, or is about to be, sold. Certainly it is not a harsh rule which exacts of him such diligence, such measure of business prudence, in looking after his own interests, as is involved in the not difficult task of discovering within a year of the day of sale that his property has been sold under the judgment which he knows is a lien against it."

But, furthermore, the statutes §§ 7720, 7547, and 7549, Comp. Laws 1913, which govern, make no provision for the service of the notice upon the judgment debtor, while § 7549 positively provides that "the failure of the sheriff to serve such warrant or notice shall not invalidate the levy, but the sheriff shall be liable to the person

whose property is attached for any damages which he may sustain by reason of such failure." The sheriff's amended return shows that this section was complied with in all respects; but even if there had been a failure to give the notice, under the clear reading of this section, it would not invalidate the levy. It seems plain to us that Past actually knew of the sale, but, having mortgaged the place himself for practically its entire value, he did not care to redeem from the $119 sale, unless able to save the place from the Toay mortgage and judgment, amounting to something over $2,500, and the first mortgage held by Trimble, which at the time of the sale amounted to about $6,300, a total of $8,800. He, undoubtedly, relied upon Toay to redeem from the small execution sale. Toay, the only person who could be expected to redeem, is not a party to this suit and asks for no relief. From Toay's testimony it appears that he intended to redeem, but through some oversight neglected it.

(3) We come now to the last and most serious question in this case. Appellant insists that the conduct of the Trimble Company in the entire transaction was unfair, and that in fact a conspiracy existed between it and Rennier & Wilmart to plunder Past's equities. There is no direct evidence upon this point, appellant relying upon several enumerated circumstances to establish the truth of this accusation. There is nothing prior to the execution sale in any way bearing out this conspiracy. Trimble Company were agents for R. J. Trimble and were the most natural purchasers at the sale. They were solicited by Rennier & Wilmart because they wanted their money on their judgment. Trimble & Company on their part may have seen some profit in the purchase. Shortly after the purchase aforesaid, the secretary of the company wrote notices which were sent by the deputy sheriff to each house demanding that the tenants pay the rent to the company under the sheriff's certificate. Mell paid $40, with the understanding, however, that it was to be held by the company until the matter was finally settled. Sappenfield paid $15 rent and then made a contract to purchase the property from the Trimble Company. This was all the money that was received during the year of redemption, and there is no evidence that they could have forced collection of any more. Nor were they under the same obligation to make such collection as would be the original judgment creditors. On June 23, 1910,

they obtained and recorded their sheriff's deed, and everything that is hereinafter mentioned in any way establishing bad faith occurred when they considered themselves the owners thereunder.

Earlier in this opinion, it was mentioned that the first mortgage of $4,000 was foreclosed. Trimble Company took care of this foreclosure and upon the day of sale apportioned the mortgage among the several tracts with the intention of bidding upon each tract separately. For one tract covered by the mortgage, but not by the execution sale, $2,100 was bid; for another, $2,200; for the Mell property, $225; for the Sappenfield property, $300. For the feed mill, the balance due upon their mortgage, somewhere between $400 and $500. As the sale proceeded, each of the different tracts was bid in in the name of R. J. Trimble until there remained only the feed mill, upon which the defendant Duffey unexpectedly bid $1,200. This produced a surplus of $774.43. However, it is stipulated that no disposition should be made of this surplus in this lawsuit. Duffey, to prevent redemption, thereupon purchased of the Trimble Company their interest in the feed mill property for $161, thus becoming the absolute owner of the record title of such property. Appellant points to those circumstances as evidence of conspiracy to devest Past of all his property without any attempt to make the same pay his debts. We do not believe the conduct of Trimble Company in this matter unusual. Unquestionably, they proportioned the mortgage with the light end upon the property which they had acquired at execution sale, and the heavy end upon the remaining property, which might possibly be redeemed. This does not prove that a conspiracy existed some fourteen months prior with Rennier & Wilmart. Another circumstance pointed out by appellant arose later. It will be remembered that Toay was the assignee of the second mortgage and that he desired to redeem the property covered by the execution sale, and to that end paid to the sheriff certain sums and obtained from the sheriff a certificate of redemption. This, however, was after Past's title had been extinguished by the issuance of the sheriff's deed. Therefore, Toay was not a redemptioner in law as to those particular tracts and the sheriff's acts were entirely unauthorized. Toay also attempted to buy the R. J. Trimble mortgage as hereinbefore mentioned, and at that time Trimble Company demanded a bonus of $2,000, but as this was long

after the issuance of the sheriff's deed we cannot say that the circumstance relates back to and proves fraud in the initial purchase of the tract. Still another circumstance relates wholly to the feed mill property. It will be remembered that the sheriff's deed on execution sale was obtained and filed June 23, 1910, thus shutting out any interest that Past had in this property. The sale under the first mortgage occurred August 20, 1910. Shortly before the expiration of the time for redemption from such mortgage sale, plaintiff demanded of Duffey that he account to him for the value of the use and occupation of the premises during the year that he had been in possession, and at the same time presented and filed with the sheriff a notice of redemption of said premises and offered to pay to Duffey the balance which might be determined to be due to him upon such redemption after deducting for the use and occupation of the property during the year. This was after June 23, 1910, when Past had ceased to be a redemptioner, and, moreover, no money was presented to Duffey, who ignored the demand and shortly thereafter obtained a sheriff's deed upon the mortgage foreclosure also. This circumstance would not, of course, establish a conspiracy upon the part of the Trimble Company, who knew nothing about it. It cannot be claimed that Duffey was in the conspiracy himself, and we do not believe it sufficient to set aside the sheriff's deed upon execution sale so far as he is concerned. There are other incidents relied upon by appellant along the same lines, which space forbids us to enumerate, but we are satisfied that none of them establish the conspiracy or fraud which must be proven before the deed can be set aside and redemption allowed at the late date attempted in this action. In Power v. Larabee, 3 N. D. 502, 44 Am. St. Rep. 577, 57 N. W. 789, it is said: "Where defendant knows of the sale and has a fair opportunity to redeem, he cannot have the sale set aside because of inadequacy of price, as the redemption right affords him ample protection against a sacrifice of his property." In the case of Warren v. Stinson, 6 N. D. 293, 70 N. W. 279, is found a discussion relative to the necessity of the service of the notice and of levy upon the judgment debtor. See also 17 Cyc. 1097. Upon the question of the right of the sheriff to amend the defective return, see 17 Cyc. 1373 and cases cited. Also 18 Enc. Pl. & Pr. 963. Also upon its face effect, see Marin v. Potter, 15 N. D. 284, 107 N. W. 970.

(4) As an additional reason for the affirmance, respondent points to the lack of diligence and laches of the plaintiff. Past must have known of the execution sale almost immediately after it occurred because he testifies that after such sale he was unable to collect rent from his tenants. This was in June, 1909. Sheriff's deed was issued June 23, 1910, and it was not until August, 1911, that this action was brought. See Higbee v. Daeley, 15 N. D. 339, 109 N. W. 318. This argument is sound.

(5) Still another reason advanced by respondent for an affirmance, is that no redemption was made by plaintiff from the first mortgage. sale, and that he is thereby excluded from any interest in the premises, even though he should succeed in setting aside the sheriff's deed upon the execution sale. This in itself would be enough to defeat plaintiff's action, but is unnecessary on account of the prior holdings. Upon the whole record we are unable to find any reason for setting aside the sheriff's deed given pursuant to the execution sale, or for allowing plaintiff to redeem at this time. The judgment of the trial court, is in all things affirmed.