[File No. 6617.]

L. R. BAIRD, as Receiver for the Farmers & Merchants Bank of New England, North Dakota, a Corporation, Respondent, v. SAX AUTO COMPANY, a Corporation, Appellant.

(291 N. W. 696.)

Opinion filed April 26, 1940.   Rehearing denied May 6, 1940.

*C. H. Starke,* for appellant.

*J. W. Sturgeon,* for respondent.

BURR, J. The plaintiff, as receiver of the Farmers & Merchants State Bank of New England, alleges: That ever since October 8, 1936, he has been the owner of Lot 11, Block 1 of Mead's Addition to New England; that said premises, since that time, have been used and occupied by the defendant, and that the defendant has failed to pay any rent therefor, or the reasonable value of its use and occupation. He, therefore, demands judgment for "the reasonable value of the use and occupation of said lot Eleven" up to October 8, 1938 (apparently intended for January, 1938) alleged to be $450.

In its answer the defendant denies that the plaintiff is the owner of the property or entitled to the reasonable value of its use and occupation; alleges that without any knowledge that the plaintiff was the owner of the property, it paid rent to one Gardner up to and including January 6, 1938, at the rate of $60 per month, and that this "was greater in amount than the value of the use and occupation of said premises."

The answer sets forth a cross-complaint, alleging that Lots 10 and 11 constitute a single parcel of land upon which there was a single building which "constituted the principal value of said property," that the property had been mortgaged and was sold on foreclosure as Lots 11 and 12, and they "were sold in one parcel to the plaintiff for a single consideration;" that this was not in accordance with the judgment ordering the sale, and the effect "was to divide the mortgaged property" and "to sell a portion of such building together with other vacant property adjoining . . . which . . . was not covered by the mortgage . . . for a single consideration, . . ." and thus the sale was wholly void; that the defendant became the owner of the premises through the deed from the mortgagors, and so it prays "that the foreclosure sale be vacated and the title of the plaintiff be declared null and void, and the plaintiff be decreed to have no estate or interest in said premises whatsoever. That the title of the defendant . . . be quieted as against the plaintiff. . . ."

The facts are practically undisputed. Prior to March 26, 1931, the New England Horse & Auto Co. was the owner of Lots 10 and 11 of the addition, and had given a mortgage thereon to the bank to secure the payment of $3,000; on March 26, 1931, one Trena C. Gardner became the owner of the property, and on that date she executed and de-

livered her mortgage on this property to. the bank to secure the payment of the aforesaid note. In this mortgage her husband joined. ·Default occurred and foreclosure proceedings were commenced, the said Trena C. Gardner and defendant herein being made parties defendant.

On October 9, 1934, the court ordered judgment in the foreclosure proceedings, finding that there was due on the note the sum of $4,080 principal and interest, and $108 costs. Judgment was entered on December 17, 1934, directing the sheriff to sell these premises, Lots 10 and 11 of said Block 1, at public auction at the front door of the court- · house, giving public notice of the time and place of the sale; that "said mortgaged premises be offered for sale in separate lots and, if there are no bids, then same may be sold as one parcel."

A special execution was thereupon issued, directing the sale of Lots 10 and 11 of Block 1 in accordance with the judgment entered.

The sheriff published a notice of sale, but through some inadvertence, the published notice described the premises as Lots 11 and 12 of Block 1, and the report of sale as made by the sheriff shows that on October 8, 1935, he sold "All of Lots Eleven (11) and Twelve (12) in Block One (1), of Mead's Addition to the City of New England;" that at the sale he "offered said premises as a whole and received a bid therefor from the Plaintiff, L. R. Baird, Receiver for the Farmers & Merchants State Bank, a corporation, . . . the sum bid therefor by the aforesaid party being the sum of Twenty Five Hundred and 00/100 Dollars ($2500.00) this being the best bid I then and there openly and publicly struck off and sold the same to the aforesaid L. R. Baird . . . the Plaintiff herein."

A certificate of sale of Lots 11 and 12 was issued in conformity with this return, and on October 30, 1935, said sale of Lots 11 and 12 as reported, was confirmed by the court. In the order of confirmation, "It is ordered, That said sale be and the same is in all things confirmed. And the Clerk of Court is hereby directed to make an entry on the journal that the Court, being fully advised in the premises, is satisfied of the legality of said sale, and an order that the sheriff of said county of Hettinger make to said L. R. Baird, receiver for the Farmers & Merchants State Bank of New England, North Dakota, a corporation, a deed to the premises in the foregoing report described, at the expira-

·tion of one year from the day of said sale, unless the same is redeemed according to law."

No objection to the confirmation of the sale was made, nor was any motion or application to set aside the sale made, or action to·set aside commenced, and no redemption was made.

On October 26, 1936, the defendant received written notice from the plaintiff that he was the owner of Lots 11 and 12, and demand was made at that time upon the defendant in part as follows: "I am hereby notifying you that ownership of this property, after October 8, 1936, is in the name of L. R. Baird, receiver . . . and demand is hereby made that any and all rents accruing after October 8, 1936 be paid to L. R. Baird . . . and that you will be held accountable for the payment of such rent to L. R. Baird. . . ."

On November 25, 1936, the sheriff executed and delivered to L. R. Baird, plaintiff, a sheriff's deed under said foreclosure proceedings, purporting to convey "Lot Eleven (11) in Block One (1) Mead's·Addition," etc., omitting all references to either Lot 10 or Lot 12. It is under this deed that the plaintiff claims to be the owner of Lot 11. Lot 12 was in no way connected with the foreclosure proceedings, and the record shows that at all times involved, it was owned by the Standard Oil Co.

On August 13, 1937, Trena C. Gardner and her husband executed and delivered to the defendant a quitclaim deed (dated Feb. 1, 1936) to "Lots ten (10) and eleven (11) in Block one (1) of Mead's Addition to New England, No. Dak." and inserting therein the following clause: "It being intended by this instrument to transfer to the second party (Sax Auto Co.) all rights of redemption and occupancy and any other rights which first parties (the Gardners) have in said premises, except rentals accruing to October 6, 1936."

The record shows that the defendant had been renting the premises from the Gardners and paying rent at the rate of $60 per month for eleven months in the· year—the twelfth month being free.

The record further shows that Lots 10 and 11 of Block 1 constitute "a single lot or parcel of land upon which there was a single building, resting and located on each of said lots in such a manner that the same could not be divided or separated without great damage to each part thereof. That the mortgage described in the complaint included said

building and said building constituted the principal value of said property and the principal security for the payment of the debt secured by said mortgage."

This is an allegation in the cross-complaint of the defendant's answer, and though there is a general denial in the reply, there is no dispute as to this fact.

The record shows further that said building is used as a garage; that the building is spread equally over Lots 10 and 11, and that the main entrance to the building is on Lot 10, as is the only automobile entrance.

The appellant states that there are two main issues—that the sheriff's deed, under which the plaintiff claims title, is void; and that in any event, all that the plaintiff may recover is the value of the use and occupation of Lot 11.

It is the claim of the defendant that the court, in granting the plaintiff's motion for judgment non obstante veredicto, allowed the plaintiff rent for one half of the rent of the building paid by the defendant under its lease from the Gardners, instead of ascertaining the value of the use and occupation of Lot 11 and the portion of the building thereon, if the plaintiff be entitled to anything.

The execution directed the sheriff to sell Lots 10 and 11, to offer them separately first, and if no bids were received, to offer them as an entirety. He did not do this. It was his duty to do so. He was the officer of the court, acting under the court in a judicial sale under the foreclosure. He made a report to the court immediately after the sale, showed his irregularities in full, and it is clear he did not follow his instructions.

In Warren v. Stinson, 6 N. D. 293, 309, 70 N. W. 279, 284, we say it is "the duty of the court, if on the mere inspection of the report of sale the irregularity is made apparent, to set aside the sale without any application to that effect from the debtor, and without the necessity of his being heard."

The court did not do this. After the sale, the sheriff makes his report and asks the court to confirm the sale, that is, approve the action of its own officer.

By approving this sale, so irregularly made, the court in effect said, "You did not follow your instructions accurately or specifically; never-

theless, I approve of what you have done in selling Lot 11 and we will let it stand."

"The confirmation of the sale as reported manifests the court's acceptance of the purchaser's offer as embodied in his bid." 16 R. C. L. p. 82. In Camp v. Riddle, 128 Tenn. 294, 301, 160 S. W. 844, 846, Ann. Cas. 1915C 145, the court says, dealing with the Tennessee law, "The general effect of our cases is that when a bid is made at the master's sale, this is a mere offer on the part of the proposed purchaser, continuing in its character and holding good, however, until the court acts on it either by rejecting it or accepting it; that this acceptance is manifested by the confirmation of the report of sale." To the same effect is Stout v. Philippi Mfg. & Mercantile Co. 41 W. Va. 339, 23 S. E. 571, 574, 56 Am. St. Rep. 843.

The court could have required notice of the application to confirm the sale, and in effect said, "If the debtor desires to move to set aside the sale or otherwise attack it, he may do so."

Section 7752, Comp. Laws 1913, provides for confirmation of sales, and in Warren v. Stinson, 6 N. D. 293, 70 N. W. 279, supra, we show. "an order of confirmation made under it is in no way binding upon the debtor as against a direct attack upon the sale by him." The debtors in this case were the Gardners. They made no attack upon the sale. When they conveyed it to the plaintiff, they had no interest in Lot 11 to convey, unless the sale was absolutely void. The order confirming the sale, as shown in the case cited, "is purely an ex parte order, which embodies no more than the decision of the court that on the face of the return it appears that in certain respects the sale is regular. The soundness of the court's law, and the truth of the facts set forth in the report, may thereafter be contested by the debtor in proper proceedings."

The appellant urges strenuously that the foreclosure sale is void because of the failure of the sheriff to follow the directions of the court in offering the mortgaged premises for sale.

The sale was not void. It was not an utter nullity. The sheriff followed the direction of the court in part. Instead of offering Lots 10 and 11 for sale, he merely offered Lot 11. This was such an irregularity as might have justified a motion to set aside the sale if the rights of the mortgagor were shown to be in any way prejudiced. It is conceivable such a sale might have had some effect upon the power to re-

deem, and upon proper showing, the court might have decided to set aside the sale entirely. But the mortgagors acquiesced in the sale. As stated in Power v. Larabee, 3 N. D. 502, 510, 57 N. W. 789, 791, 44 Am. St. Rep. 577, "There must be a period after which an execution sale will not be disturbed. All the authorities agree on this point, and there seems to be much force in the view that the defendant must move in a reasonable time, and that, where there is a right of redemption vested by the statute in the defendant, this reasonable time is measured by the statutory period of redemption." We cite many authorities in support of that proposition. Again this court stated: "While it is true that as against the plaintiff, who has bought in the property, the court may set aside a sale even after the redemption period has expired, this can be done only by a proper showing excusing the delay in making the motion." In his concurring opinion in that case, Judge Wallin says: "The practice of moving by motion in the action to set aside irregular sales is well established, and is a speedy and convenient remedy." In this case we are not approving the order of confirmation, because of the irregularity which was apparent upon the record itself. Nevertheless, the order of confirmation does have some standing. It is an ex parte approval by the trial court of what was done at the sale, and such adjudication "supplies all defects in the proceedings, except in case of fraud or lack of jurisdiction." We quote this statement from 12 Am. & Eng. Enc. Law, 219, in the case of Dakota Invest. Co. v. Sullivan, 9 N. D. 303, 305, 83 N. W. 233, 234, 81 Am. St. Rep. 580. Therein we quote also from Kleber on Void Judicial and Execution Sales as follows: "Where execution sales are required by statute to be confirmed, the same rule then applies to them as is applicable to judicial sales, namely, that in the absence of fraud the order of confirmation cures all defects and irregularities in the sale, and the purchaser acquires all the title of the judgment debtor. Objections to the sale for errors and irregularities not of a jurisdictional nature must be urged before confirmation, or else they are too late."

Clearly, whatever irregularity there was in this sale is not jurisdictional in its nature. Neither is there claim of surprise or misrepresentation, or fraud, or disadvantage on the part of anyone concerned in this case.

The time of redemption expired long before this cross-complaint was

served.  In Michael v. Grady, 52 N. D. 740, 204 N. W. 182, we point out (page 745), "The determining factor, . . . is whether prejudice is suffered by reason of the failure to comply with the statutory requirement."  A party may show this if his action is timely.  We add, in the case cited:  "The plaintiff alleges prejudice to that right by reason of a sale not in accordance with the statute. . . . The action to set aside was timely, *being within the period of redemption.*"

This "action" referred to was a suit to vacate and set aside the sale. In the case at bar, there is no showing whatever that anyone interested in the property was in any way prevented from redeeming, or that his right of redemption was affected or injured by this irregularity.  The trial court was correct in holding that the plaintiff was the owner of Lot 11.

Lot 10 not having been sold, the defendant is not required to pay plaintiff rent for the use of that lot, or anything for its use and occupation.  This action does not seek such recovery.  It is concerned with Lot 11 only.

The jury found for the plaintiff in the sum of $150.  Recovery is sought for fifteen months.  The defendant had been paying to the Gardners rent at the rate of $660 per year for both lots and the building situated on them.  The court in granting the motion of the plaintiff for judgment notwithstanding the verdict clearly allowed the plaintiff as and for the value of the use and occupation of Lot 11, one half of the rental value which defendant had been paying.

The action is to recover "the reasonable value of the use and occupation of said Lot Eleven (11)."  It is true that the pleader says this was $30 per month, which happens to be one half of the amount of rent that the defendant had been paying to the Gardners.  However, the action is to recover the reasonable value of the premises.

There are no exceptions taken to any portion of the charge, but in the specifications of error on appeal, defendant urges that the evidence is insufficient to sustain the judgment in that "there is no competent evidence to sustain the judgment of the court that the plaintiff was entitled to recover one half of $60 per month rental for:

"1.  The tenancy of the Sax Auto Co. terminated upon the transfer of the leasehold to the plaintiff.

"2. There was no leasehold interest to pass with the reversion to the plaintiff.

"3. There was neither privity of estate or privity of contract between the plaintiff and the defendant which would sustain a judgment for rental at the rate previously paid.

"4. Assuming that plaintiff was owner of the property under the sheriff's deed, the plaintiff had a right to recover of the defendant the value of the use and occupation of the premises, and the verdict of the jury on that point was final."

When the jury brought in a verdict for $150, the counsel for the plaintiff immediately made a motion for judgment notwithstanding the verdict "for the following reasons: "1. That the verdict shows beyond the peradventure of a doubt that it was given in passion and prejudice, and that the verdict is contrary to the instructions of the court and that the same must have been arrived at by a compromise. In this connection I want to say that under the instructions of the court the only question that was left for the jury to decide was the question of whether there was any notice given. Their finding a verdict for the plaintiff shows that they found that there was notice given. The court instructed the jury that the plaintiff was the owner of Lot 11, and he further instructed the jury that if he was the owner of Lot 11 he was entitled to the allocate part of the rent received. There is no question there were only two parts to the original lease, that is Lots 10 and 11. The court also instructed that we were asking for rent for fifteen months, and the only way that you can reconcile the verdict of $150 under the instructions given is that the jury took into consideration the testimony of one Saxowsky who testified that the reasonable value of the use and occupation of Lot 11 was $10 per month; that the testimony of Saxowsky in regard to the value of the use and occupation of this lot was ordered stricken by the court."

In the charge to the jury, the court stated that "the rent belongs to the owner of the soil, and if you find from all the evidence in this case that the plaintiff was the owner of Lot 11, then and in that case he would be entitled to the rent accruing from said Lot 11."

The court further instructed the jury that the purchaser was entitled to the rents falling due after one year from such sale. Again the court charged the jury that the rights of the various parties were crys-

tallized at the time of the expiration of the year of redemption, and "apportionment of rent may be defined as a division or partition of rent or making of it into parts. . . . The rent . ·. . may be divided and ought to be paid to those who are to have the land upon the expiration of the lease." And again the court charged that where "an estate under lease is severed or divided, whether by a partial grant of the reversion or by a taking under an execution against the lessor or owner, the rent which is said to issue out of the land and to be incident thereto will be apportioned or divided between or among the respective owners."

While there are no exceptions taken to the charge, it is necessary to refer to it in order to show the theory upon which the court evidently acted when he granted the motion for judgment notwithstanding the verdict. Because the defendant was paying the Gardners at the rate of $60 per month for the premises for eleven months per year, and because Lot 10 had not been sold, it seemed to be the theory of the court that the rent per month should be divided equally between the lots and the plaintiff could recover for Lot 11 on that basis.

Testimony was offered by the defendant, tending to show the reasonable value of the use and occupation of Lot 11, and this was based upon the arrangement of the building, with its heating apparatus, the location of the furnace, the showroom, and other portions of the building. There was testimony showing that the reasonable value of the use and occupation of Lot 11 was $10 per month, and that the reasonable value for the whole building was $30 per month. We do not find that this testimony was stricken out. In his brief, the plaintiff says, "The learned trial court found that the premises were rented for the sum of $60 per month and that the property was rented as an unit, and he rightly found that the plaintiff was entitled to one half of the rent for the period of fifteen months, or the sum of $450."

The year of redemption having expired on October 8, 1936, the plaintiff was entitled to the value of the use and occupation of Lot 11 from then on. That is what he sued for. The jury fixed this value in the sum of $150. The trial court was in error in ordering judgment for the period involved at the rate of the rental value paid theretofore.

The defendant moved for judgment notwithstanding the verdict, and also moved to vacate and set aside the judgment entered upon the ver-

dict in favor of the plaintiff. On this being denied, the defendant appealed from the whole of the judgment entered. This judgment must be reversed.

There was evidence introduced upon which the jury could find the value of the use and occupation of Lot 11 in the sum of $150, as stated in the verdict. There was evidence upon which the jury could have found in a greater sum; but the verdict of the jury is binding in this case. The judgment, therefore, is modified in this, that judgment will be entered for the plaintiff in the sum of $150 as found by the jury, and as so modified, the judgment is affirmed.

NUESSLE, Ch. J., and CHRISTIANSON and BURKE, JJ., concur.

MORRIS, J. (dissenting). I am unable to agree with the opinion of the majority. It is based upon the premise that the foreclosure sale is only voidable. In my opinion the sale is a complete nullity and none of the parties acquired any rights thereunder.

The mortgage that was foreclosed described Lots 10 and 11. The value of the premises consists chiefly of a building that is located on both lots. Lot 12 adjacent to Lot 11 is vacant. The judgment and decree in the foreclosure action and the special execution issued pursuant thereto properly described Lots 10 and 11 and directed the sheriff to offer them separately and if no bids were received to offer them for sale as an entirety.

All the steps taken by the sheriff were erroneous and did not comply with the directions contained in the execution. Instead of advertising and selling Lots 10 and 11 as directed, he advertised and sold Lots 11 and 12. Lot 12 was not covered by the mortgage, and was not the property of the mortgagors. The sheriff did not offer Lots 11 and 12 separately, but offered them as one tract. The only bid he received was for them as one tract, which the sheriff accepted. He made a report of sale to the court and the court erroneously confirmed the sale. The sheriff thus sold as one tract, two lots, one of which was not covered by the mortgage.

There is no question but that the sale is entirely void and of no effect as to Lot 12. The sale cannot be half good and half bad. It constitutes one indivisible official act, and since it is void as to Lot 12 it is

void as to the entire tract that was sold as a unit, upon one bid and for one price.

The defect was not cured by the confirmation of the sale. The court had no jurisdiction over Lot 12 and could neither order the sale of that lot nor confirm the sale that was made. It follows that it could not confirm half of the sale since the two lots were sold as a whole. The whole sale being void, confirmation could not make it valid. Jenkins Land & Live Stock Co. v. Atwood, 80 Neb. 806, 115 N. W. 305.

"But the curative powers of orders of confirmation extend to voidable, rather than to void sales. If a sale be void because the court did not have jurisdiction to order it, or because it included property not described in the decree or order of sale, an order confirming it is necessarily inoperative. 'The sale being void, there was no subject matter upon which the order of confirmation could act.' " Freeman, Void Judicial Sales, 3d ed. § 44.

The plaintiff has a good decree for the foreclosure of the mortgage, but all proceedings subsequent to the entry of that decree are void. He has acquired no rights in the property which entitle him to recover against the defendant for rents or for the value of use and occupation of the premises.