# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 13

| | |
|---|---|
| George Seccombe, Barbara Treska, Erik Naesset, Helge Naesset, Astri Holst, Irene Markle, and Alice Nasset, | Plaintiffs and Appellants |
| and | |
| Slawson Exploration Company, Inc. and Alameda Energy, Inc., | Plaintiffs-Intervenors and Appellants |
| v. | |
| Bradley C. Rohde and Karen D. Rohde, Trustees of the Bradley C. Rohde Living Trust dated June 22, 2010, Anita Rohde, Trustee of the Anita Rohde Living Trust UDT October 8, 2009, Dennis Rohde, Trustee of the Dennis Rohde Living Trust UDT October 8, 2009, Gary Rohde; Bradley Rohde; Dennis Rohde; Northern Oil and Gas, Inc., Ryan Family Mineral Partnership, S. Reger Family Mineral Partnership, S. Reger Family, Inc., Kootenia Resources Corporation, Summerfield C. Baldridge, Beartooth Ridge Resources, Inc., Montana Oil Properties, Inc., Lakeside State Bank, and all persons unknown claiming any estate or interest in, or lien or encumbrance upon the property described in the complaint, | Defendants and Appellees |

No. 20180069

Appeal from the District Court of Mountrail County, North Central Judicial District, the Honorable Gary H. Lee, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Rachel A. Bruner (argued), Patrick W. Durick (on brief), and Benjamin W. Keup (on brief), Bismarck, ND, for plaintiffs and appellants George Seccombe, Barbara Treska, Erik Naesset, Helge Naesset, Astri Holst, Irene Markle, and Alice Nasset.

Adam M. Olschlager (argued), Griffin B. Stevens (appeared), and Uriah J. Price (on brief), Bozeman, MT, for plaintiffs-intervenors and appellants Slawson Exploration Company, Inc., and Alameda Energy, Inc.

Scott M. Knudsvig (argued), and Matthew H. Olson (on brief), Minot, ND, for defendants and appellees Anita Rohde, Bradley C. Rohde, Dennis Rohde, Gary Rohde, and Karen D. Rohde.

Andrew D. Cook (argued), Michel W. Stefonowicz (on brief), Robert G. Hoy (on brief), West Fargo, ND, and Loren J. O'Toole II (on brief), Plentywood, MT, for defendants and appellees Ryan Family Mineral Partnership, S. Reger Family Mineral Partnership, S. Reger Family, Inc., Kootenia Resources Corporation, Summerfield C. Baldridge, Beartooth Ridge Resources, Inc., and Montana Oil Properties, Inc.

Richard P. Olson (argued), and Wanda L. Fischer (on brief), Minot, ND, for defendant and appellee Lakeside State Bank.

Lawrence Bender (on brief), Bismarck, ND, for defendant and appellee Northern Oil and Gas, Inc.

2

**VandeWalle, Chief Justice.**

[¶1]    George Seccombe and other heirs of Olaf Nasset ("Nasset heirs") and the intervener plaintiffs, Slawson Exploration Company, Inc., and Alameda Energy, Inc., appealed from a judgment deciding ownership of certain minerals in Mountrail County.  We conclude the district court properly determined ownership of the minerals and did not err in dismissing the Nasset heirs' breach of fiduciary duty claim. We affirm.

I

[¶2]    Olaf Nasset owned real property in Mountrail County described as the southeast quarter of section 5 and the northeast quarter of section 8 of township 151 north, range 92 west.  He owned fifty percent of the minerals in the property.

[¶3]    Olaf Nasset died in November 1961, and Lakeside State Bank was appointed the executor of his estate. On January 24, 1962, Lakeside petitioned the county court for authority to sell real property belonging to the estate.  The petition stated it was in the best interest of the estate and the heirs to sell the real property described as:

> Township 151 North, Range 92 West:
>     Section 5: SE1/4
>     Section 8: NE: [sic]
> The estate reserved 1/2 of the mineral interest in and to the above described real estate.

On February 26, 1962, the county court ordered the executor was authorized to sell the property, but the court stated, "The estate reserves a 1/2 mineral interest" in the property.

[¶4]    Notice of the sale of the property was published in a local newspaper in March 1962, describing the property for sale as:

> TOWNSHIP 151 NORTH, RANGE 92 WEST, MOUNTRAIL COUNTY, NORTH DAKOTA:

1

>Section 5: SE1/4
>Section 8: NE1/4
>The estate reserves a 1/2 mineral interest in and to the above described real estate.

Gilbert Rohde bid on the property for $15,600. Gilbert Rohde's bid included a legal description of the property without including the mineral reservation. On April 9, 1962, Lakeside filed a report of sale of real property. The report contained the legal description of the property without the mineral reservation.

[¶5] On April 9, 1962, the county court confirmed the sale and described the property sold as, "Southeast Quarter (SE1/4) of Section Five (5) and Northeast Quarter (NE1/4) of Section Eight (8), Township One Hundred Fifty-one (151) North, Range Ninety-Two (92) West of the Fifth Principal Meridian." On April 16, 1962, an executor's deed transferring the property to Gilbert Rohde was recorded in the Office of the Register of Deeds of Mountrail County. The executor's deed described the property as "Southeast Quarter (SE1/4) of Section Five (5) and Northeast Quarter (NE1/4) of Section Eight (8), Township One Hundred Fifty-one (151) North, Range Ninety-Two (92) West of the Fifth Principal Meridian."

[¶6] On April 25, 1962, the county court entered an amended order confirming the sale of the real property. The amended order included a description of the property stating the property sold is:

>Southeast Quarter (SE1/4) of Section Five (5) and Northeast Quarter (NE1/4) of Section Eight (8), Township One Hundred Fifty-one (151) North, Range Ninety-two (92) West of the Fifth Principal Meridian.
>The estate reserves a 1/2 mineral interest in and to the above described real estate.

On May 8, 1962, an amended executor's deed was recorded with the Office of the Register of Deeds in Mountrail County. The amended executor's deed included the same property description as the amended order confirming the sale, including the language about the mineral reservation. The amended deed also stated, "This deed is given to correct that certain Executor's Deed dated April 16, 1962, and filed for record April 16th, 1962 in Book 350 at page 159."

[¶7]     On July 13, 1962, the county court entered the final decree of distribution. The decree stated each of the five named heirs received one-fifth of the personal property, which included $20,814.37.  On August 6, 1962, the county court ordered the final discharge of the executor. On August 10, 1962, the executor petitioned to re-open the estate.  The petition stated the reserved mineral interests were inadvertently left out of the final decree and it was necessary that the estate be reopened for the sole purpose of correcting the error by entering an amended final decree of distribution including the 1/2 mineral interest.  The county court granted the petition.  On August 10, 1962, an amended final decree of distribution was entered, stating each of the five named heirs received a 1/10 mineral interest.

[¶8]     In 2012, the Nasset heirs sued the heirs of Gilbert Rohde and other parties claiming an interest in the minerals through the Rohde heirs.  The Nasset heirs sought to quiet title and determine ownership of the minerals, revision of the executor's deed, and damages for a slander of title claim.  They alleged the original heirs of Olaf Nasset intended to reserve a one-half mineral interest and they are entitled to receive legal title to one-half of the minerals as provided in the published notice of sale of the real property and the amended executor's deed.  The Nasset heirs also sued Lakeside for breach of fiduciary duty, alleging Lakeside had fiduciary obligations to the estate, it was aware or should have been aware of the heirs' intention to retain a one-half mineral interest, and it breached its fiduciary duty by executing the executor's deed to Gilbert Rohde without properly reserving the mineral interests.

[¶9]     Lakeside answered the Nasset heirs' complaint and also moved for summary judgment.  Lakeside argued the breach of fiduciary duty claim was barred by the statute of limitations on proceedings against personal representatives.  The Nasset heirs opposed the motion, arguing the statute of limitations did not bar their claim. The district court granted Lakeside's motion for summary judgment.  The court concluded the Nasset heirs' breach of fiduciary duty claim against Lakeside was barred by the statute of limitations under N.D.C.C. § 30-24-13 (1960) or N.D.C.C. § 30.1-21-05.

3

[¶10]   The Rohde heirs answered the Nasset heirs' complaint and counterclaimed to quiet title and determine ownership of the minerals in their favor. (Rec. 22, 136) Defendant Northern Oil and Gas, Inc. ("Northern"), answered and counterclaimed to quiet title and for a declaratory judgment that Gilbert Rohde acquired a one-half interest in the minerals. Defendants S. Reger Family Mineral Partnership, Ryan Family Mineral Partnership, Kootenai Resources Corporation, Summerfield C. Baldridge, and Montana Oil Properties Inc. (collectively "Montana defendants"), answered and counterclaimed for a declaratory judgment and to quiet title.

[¶11]   Slawson and Alameda moved to intervene as plaintiffs. They claimed they have an interest in the property, including that Slawson is the owner of an oil and gas leasehold estate through oil and gas leases executed by the Nasset heirs and that Alameda owns an undivided mineral interest in the property. The district court granted the intervener plaintiffs' motion. The intervener plaintiffs filed a complaint, requesting a declaratory judgment related to ownership of the minerals and to quiet title. The Rohde heirs, Northern, and the Montana defendants each answered the plaintiff intervener's complaint and counterclaimed seeking a declaratory judgment related to ownership of the minerals and to quiet title.

[¶12]   The Rohde heirs, the Montana defendants, and Northern each moved for summary judgment. The Nasset heirs and intervener plaintiffs each filed cross-motions for summary judgment.

[¶13]   After a hearing, the district court granted summary judgment in favor of the Rohde heirs and against the Nasset heirs, quieted title in favor of the Rohde heirs, and dismissed the Nasset heirs' claim for slander of title. The district court concluded the Rohde heirs own the minerals because the original executor's deed approved by the court was final, a legal action was required to undo the executor's deed, neither the heirs nor the executor commenced an action to correct or vacate the deed, and therefore the subsequent orders and the amended deed had no effect. The court also concluded the Nasset heirs' claims were barred by the statute of limitations.

4

## II

[¶14]  Our standard for reviewing summary judgments is well-established:

> Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Gerrity Bakken, LLC v. Oasis Petroleum N. Am., LLC*, 2018 ND 180, ¶ 8, 915 N.W.2d 677 (quoting *Arnegard v. Arnegard Twp.*, 2018 ND 80, ¶ 18, 908 N.W.2d 737).

## III

[¶15]  The Nasset heirs and the intervener plaintiffs argue the district court erred in deciding ownership of the mineral interests. They claim the sale was a statutory probate proceeding strictly governed by the judicial sale procedures of N.D.C.C. ch. 30-19 (1960) and under statutory procedures the minerals were reserved to the estate. They also contend the district court erred in deciding their quiet title claim was barred by the statute of limitations.

## A

[¶16]  The Rohde heirs, Northern, and the Montana defendants argue the district court properly determined the Nasset heirs' claims are barred by the statute of limitations.

They claim N.D.C.C. § 30-24-13 (1960) applies and provides a three-year statute of limitations.

[¶17]  At the time of the sale of the property, N.D.C.C. § 30-24-13 (1960) provided a statute of limitation for actions to recover an estate or set aside a decree, stating:

> No action for the recovery of any estate sold by an executor or administrator or otherwise disposed of under the provisions of chapter 30-19 can be maintained by any heir or other person claiming under the decedent unless it is commenced within three years next after the sale. An action to set aside a decree directing or confirming a sale or otherwise disposing of such property may be instituted and maintained at any time within three years from the discovery of the fraud or other ground upon which the action is based.

[¶18]  The district court concluded N.D.C.C. § 30-24-13 barred the Nasset heirs' claims because the action was commenced approximately 47 years after the sale of the property and after the three-year statute of limitations expired.  The court concluded the statute barred all of the heirs' claims, which included their claims to quiet title and revision of the executor's deed.  On appeal, the Nasset heirs and intervener plaintiffs only raise issues related to the quiet title claim.  Therefore, we will decide whether N.D.C.C. § 30-24-13 barred the quiet title claim.

[¶19]  As to the Nasset heirs' quiet title claim, the heirs requested the court determine that the Rohde heirs have no interest in the minerals under the property and that title to one-half of the minerals be quieted in the Nasset heirs.  Other parties also filed claims or counterclaims to quiet title.  The parties disputed the ownership of the property and requested the court determine ownership based on the events that occurred in 1962.  In *Kranz v. Tavis*, 49 N.D. 553, 192 N.W. 176, 178 (N.D. 1922), this Court held a prior version of N.D.C.C. § 30-24-13 merely limited the time in which an equitable action may be maintained to set aside a decree of the county court, directing or confirming the sale of property, or otherwise disposing of property. The Nasset heirs did not request the district court set aside the county court's order confirming the sale of the property in their quiet title claim; rather, the Nasset heirs argue the disputed property was reserved by the estate and was never sold to Gilbert Rohde.  The Nasset heirs did not request the court take any affirmative action in their

6

quiet title claim. The quiet title claim was to determine ownership of the minerals and to clear the title on which the Nasset heirs were the apparent record title holder. The quiet title claim is not an action to recover property sold by the executor, and therefore the statute of limitations under N.D.C.C. § 30-24-13 does not apply. We conclude the district court erred to the extent it concluded N.D.C.C. § 30-24-13 barred the quiet title claim.

B

[¶20]  The Nasset heirs and intervener plaintiffs argue the minerals were reserved to the estate by operation of law because N.D.C.C. ch. 30-19 required compliance with several procedures and the statutory requirements are jurisdictional in nature. They contend N.D.C.C. ch. 30-19 required the executor to file a verified petition describing the property to be sold, the county court only obtained jurisdiction over the property to the extent the property interest was described in the petition, and the court only had jurisdiction to bind interested persons to the extent the property interest was described in the public notice of the sale. They claim the court did not have jurisdiction to approve the sale of the property with the minerals and the executor did not have authority to sell the minerals when the statutory procedures were not complied with.

[¶21]  When a proceeding for the sale of real property is instituted by a petition filed with the court, the court acquires jurisdiction if the petition conforms to the statutory requirements; the statute must be substantially complied with. *See Skachenko v. Sweetman*, 77 N.D. 502, 43 N.W.2d 683, 686 (1950). The interpretation and application of a statute is a question of law, which is fully reviewable on appeal. *In re Estate of Conley*, 2008 ND 148, ¶ 15, 753 N.W.2d 384.

[¶22]  When the county court ordered the sale of the property at issue in this case, N.D.C.C. § 30-19-05 (1960) provided the statutory requirements for a petition, stating:

> To obtain an order for the sale of real property, an executor or administrator must present a verified petition to the court, setting forth:
> 1.  The amount of the personal estate that has come to his hands;

7

2. How much thereof, if any, remains undisposed of;
3. The debts outstanding against the decedent, as far as can be ascertained or estimated;
4. The amount due on the family allowance;
5. What will be due on the family allowance after the same has been in force for one year;
6. The debts, expenses, and charges of administration already accrued;
7. An estimate of what debts, expenses, and charges will or may accrue during the administration;
8. A general description of all the real property of which the decedent died seized, or in which he had any interest, or in which the estate has acquired any interest;
9. The condition and value of such real estate;
10. The names of the heirs, legatees, and devisees, if known to the petitioner; and
11. The way in which advantage or benefit will accrue to the estate and those interested therein, if the petition is made on the ground that it is for the advantage, benefit, and best interests of the estate, and those interested therein, that a sale be made.

If any of such matters cannot be ascertained, it must be so stated in the petition, but a failure to set forth facts hereinbefore enumerated will not invalidate the subsequent proceedings, if the defects are supplied by the proofs at the hearing, or it is stated in the decree that such sale is necessary, or for the advantage, benefit, and best interests of the estate and those interested therein.

[¶23] Here, the petition for sale of the real property stated there was $10,100 in the personal estate, the entire amount of the personal estate was undisposed of, the amount of the debts outstanding was undetermined, and there was no family allowance due and no amount would be due after one year. The petition also stated $27 in debts, expenses, and charges of administration had accrued and an estimated $95 would accrue. The real property Olaf Nasset had any interest in or in which the estate had acquired an interest was described as:

TOWNSHIP 151 NORTH, RANGE 92 WEST:
    Section 5: SE1/4
    Section 8: NE1/4

The property was described as being in "very good" condition and value. The petition included names of the heirs, legatees, and devisees of the decedent. The petition stated

8

the property was being sold for the advantage, benefit, and best interests of the estate because the sale was "for the best interest of the estate and the heirs." The petition also included a description of the property to be sold and stated, "The estate reserved 1/2 of the mineral interest in and to the above described real estate."

[¶24] The Nasset heirs and intervener plaintiffs do not argue the petition did not substantially comply with statutory requirements of N.D.C.C. § 30-19-05. That statute did not require the petition to describe the property to be sold; rather, the plain language of the statute only required the petition to generally describe all real property in which the decedent had any interest. The petition included a general description of all the real property Olaf Nasset owned at the time of his death. Because the petition substantially complied with statutory requirements and the statute only required a general description of the property Olaf Nasset owned when he died, the county court acquired jurisdiction over the described property, including the minerals.

[¶25] "After the court obtains jurisdiction, all nonjurisdictional irregularities and defects between the acquisition of jurisdiction and the order of confirmation are cured." *Brand v. Brand*, 65 N.W.2d 457, 461 (N.D. 1954) (quoting 34 C.J.S. *Executors and Administrators* § 611, pp. 588 and 589). When the sale is required to be confirmed by statute, the order of confirmation cures all nonjurisdictional errors and irregularities, and any objections to the sale because of the errors or irregularities must be made before confirmation. *See Baird v. Sax Auto Co.*, 70 N.D. 53, 291 N.W. 696, 701 (1940)*; see also* 31 Am. Jur. 2d *Executors and Administrators* § 774 (stating confirmation cures allegedly unauthorized acts of the executor in selling the property without strictly complying with statutory procedures). Once the county court obtained jurisdiction, any errors in the property description in subsequent proceedings constitute irregularities which can only be challenged by direct attack. *Cathro v. McArthur*, 30 N.D. 337, 152 N.W. 686, 687 (1915).

[¶26] After the county court obtained jurisdiction, it authorized the sale of the property reserving the minerals, and notice of the sale of the property and the 1/2

9

mineral interest reservation was published in the local newspaper. Gilbert Rohde bid on the property giving the legal description of the property, without including the mineral reservation. The executor filed its report of sale, including a description of the property that did not contain the mineral reservation. Section 30-19-18, N.D.C.C. required the county court to examine the proceedings, determine whether the proceedings were fair, and confirm the sale and direct the conveyance to be executed if the court found the sale was legally made and fairly conducted. The court confirmed the sale of the property without reserving the minerals, in an April 9, 1962 order. The executor's deed transferring the property to Gilbert Rohde without reserving the minerals was recorded on April 16, 1962. Any errors or irregularities that occurred after the county court obtained jurisdiction over the property, including any alleged failure to strictly comply with statutory procedures or inconsistencies in the property description, were cured when the court confirmed the sale. *See Brand*, 65 N.W.2d at 461 (holding administrators' failure to disclose reservation of minerals until the report of sale was, at most, an irregularity and did not deprive the court of jurisdiction).

[¶27] "Confirmation of an . . . executor's sale, provided it is not void, renders it an enforceable contract and divests the title of the heirs." *Brand*, 65 N.W.2d at 461. The confirmation order and deed, which described the property without reserving the mineral interests, divested the estate of all title to the property, including the minerals. Once the estate was divested of the title, even if the executor did not intend to convey the minerals, the executor could not make a subsequent conveyance to correct the mistake because there was no title remaining to convey. *See Johnson v. Hovland*, 2011 ND 64, ¶ 17, 795 N.W.2d 294. The executor could not fix any mistaken conveyance by requesting an amended order confirming the sale and recording an amended deed without notice to Gilbert Rohde and a separate legal proceeding. *See id.* at ¶¶ 17-18 (re-recorded deed restricting conveyance was not a valid correction deed and party was required to pursue reformation); *Gawryluk v. Poynter*, 2002 ND 205, ¶ 17, 654 N.W.2d 400 (the presumption of delivery and acceptance of a recorded

10

correction deed by a grantee does not apply if the deed is a burden on the grantee). The amended confirmation order and amended deed are void because the estate had already been divested of title to the property, including the minerals.

[¶28] The Nasset heirs and intervener plaintiffs argue this case is controlled by this Court's decision in *Gruebele v. Gruebele*, 338 N.W.2d 805 (N.D. 1983). In *Gruebele*, a husband and wife divorced, and the district court ordered the parties' real property be sold at public auction and the proceeds be equally divided between the parties. *Id.* at 808. Advertisement for the sale stated the parties would retain the mineral rights, the husband purchased the property through the auction, the court confirmed the sale, and a deed was executed conveying the property to the husband without reserving the minerals. *Id.* The district court later entered an ex parte order stating the wife's attorney notified the court that she was entitled to half of the mineral interests, the husband refused to execute a mineral deed in favor of the wife, a hearing was unnecessary, and the wife was entitled to half of the mineral interest. The order purported to convey to the wife a mineral interest in the property previously conveyed to the husband and the order was recorded in the office of the register of deeds. *Id.* at 809. The husband brought a quiet title action in a district court in another county, and that court quieted title in his favor finding the divorce court lacked jurisdiction to enter its ex parte order purporting to affect the minerals. *Id.*

[¶29] The wife appealed, arguing the ex parte order could not be collaterally attacked in the quiet title action, the ex parte order was entered to effectuate the court's original intent to equally divide the real property, and it was issued under N.D.R.Civ.P. 60(a) to correct an oversight. *Gruebele*, 338 N.W.2d at 811. This Court said the ex parte order could not be collaterally attacked in the quiet title action unless the divorce court lacked jurisdiction to enter the order and the lack of jurisdiction was obvious from the record. *Id.* at 810. The Court said an order modifying a judgment is void unless it is made on grounds provided for in the North Dakota Rules of Civil procedure for amending or correcting a judgment. *Id.* at 811. The Court held the ex parte order was not void and was properly entered pursuant to N.D.R.Civ.P. 60(a) to

11

correct a mistake resulting from the failure to incorporate the mineral reservation language contained in the advertisement in the order confirming the sale and receiver's deed. *Id.* at 812. The Court said the ex parte order was appropriate because the court intended the property would be divided equally between the parties, the intent was not properly carried out, and it was clear a mistake occurred in carrying out the court's intent because the husband purchased the surface and minerals for the price of the surface. *Id.* Because the district court had jurisdiction to enter the ex parte order correcting the mistake, the other district court did not have jurisdiction to review the matter in the quiet title action. *Id.* at 813.

[¶30] Here there is no evidence in the record of any motion or proceeding prior to the county court entering its amended order confirming the sale and there is no explanation about why the amendment was ordered. There is no evidence the attempt to modify the original order confirming the sale and the executor's deed was properly made according to rules for amending or correcting a judgment that applied at that time. Here we are left to speculate why the amendment was made. Also, in *Gruebele,* 338 N.W.2d at 813 (VandeWalle, J., concurring), the husband, who was a party to the divorce proceeding, purchased the property and evidence established "he knew he was not to receive the minerals." There is no evidence that Gilbert Rohde had actual notice that he was not to receive the minerals. The advertisement for the sale included a description of the property reserving the minerals. Gilbert Rohde's bid for the property included a description of the property; however, the description did not include the mineral reservation. The executor's deed did not include the mineral reservation. Gilbert Rohde was not a party to the probate proceeding. There is no evidence in this record that Gilbert Rohde had notice he was not to receive the minerals.

[¶31] The county court had jurisdiction over the property, the executor's deed transferred the entire property including the minerals to Gilbert Rohde, and the amended executor's deed was void. We conclude the Rohde heirs own the mineral

12

interests and the district court did not err in granting summary judgment in favor of the Rohde heirs.

IV

[¶32]  The Nasset heirs argue the district court erred in granting Lakeside's motion for summary judgment and dismissing their breach of fiduciary duty claim against Lakeside.  They contend their claim was not barred by the statute of limitations.

[¶33]  The district court granted summary judgment, concluding the breach of fiduciary duty claim was barred by the statute of limitations under either N.D.C.C. § 30-24-13 (1960) or N.D.C.C. § 30.1-21-05.  The court said it was not clear that the six-month statute of limitations in N.D.C.C. § 30.1-21-05 applies because it was enacted in 1973, but if it does apply there must be some form of misrepresentation or inadequate disclosure to toll the statute of limitations, none of the evidence submitted showed Lakeside made a misrepresentation or inadequate disclosure, and the evidence showed Lakeside made a good faith effort to correct mistakes. The court said the claim was also barred by the three-year statute of limitations under N.D.C.C. § 30-24-13 (1960) because Lakeside and the county court's actions put the heirs on notice as to the reservation of the mineral interests and triggered the statute of limitations.

[¶34]  Section 30.1-21-05, N.D.C.C., enacted in 1973, provides limitations on proceedings against personal representatives, and states:

> Unless previously barred by adjudication and except as provided in the closing statement, the rights of successors and of creditors whose claims have not otherwise been barred against the personal representative for breach of fiduciary duty are barred unless a proceeding to assert the same is commenced within six months after the filing of the closing statement.  The rights thus barred do not include rights to recover from a personal representative for fraud, misrepresentation, or inadequate disclosure related to the settlement of the decedent's estate.

[¶35]  In 2012, the Nasset heirs sued Lakeside, the executor of Olaf Nasset's estate, for breach of fiduciary duty seeking damages.  They alleged Lakeside failed to act reasonably for the benefit of the heirs and it breached its fiduciary duty by executing

13

the executor's deed to Gilbert Rohde that failed to properly reserve one-half of the mineral interests of the property. A final decree of distribution for the Olaf Nasset estate was filed in August 1962. The Nasset heirs did not commence their action claiming Lakeside breached its fiduciary duty within six months after the filing of the closing statement.

[¶36] Although the district court questioned whether N.D.C.C. § 30.1-21-05 applies because the statute was enacted in 1973 after the alleged wrongful acts occurred in this case, the Nasset heirs do not raise that issue on appeal. Rather, they argue the limitations period did not start to run until they learned Lakeside misrepresented or failed to adequately disclose information relating to reservation of the mineral interests. The Nasset heirs argue N.D.C.C. § 30.1-21-05 does not preclude their action because there are no limitations on claims of fraud, misrepresentation, or inadequate disclosure and Lakeside misrepresented or failed to adequately disclose information related to reserving the minerals. They contend Lakeside was aware or should have been aware the heirs intended to retain the interest in the minerals, the heirs were led to believe Lakeside correctly retained the interest, the heirs relied on that information, and the heirs were unaware that there may be an issue with their ownership of the minerals until just prior to bringing the action as a result of Lakeside's misrepresentation or inadequate disclosure. They contend Lakeside's misrepresentations or inadequate disclosures prevented the original heirs from bringing a claim years ago when they were still alive.

[¶37] The original heirs were parties to the probate proceeding, and the Nasset heirs bringing this action claim their interests in the property through these original heirs. The petition to sell the property listed the names of the original heirs and the order authorizing the sale stated there was satisfactory proof of service as required by law and no person interested in the estate objected to the sale. A July 13, 1962 final decree of distribution stated notice of the application of the final decree was given or waived pursuant to law. The final decree stated each of the five named heirs received one-fifth of the personal property, which included $20,814.37. The decree did not list

14

any other property. An amended final decree of distribution dated August 10, 1962, states due notice of the application for the decree was given or waived. The amended decree included the same property as the final decree but also included the distribution of the mineral interests. Furthermore, even if the original heirs did not have actual notice of the proceedings related to the sale of the property, the executor's deed and amended executor's deed were both recorded and the probate documents were filed in the county court and in the office of the register of deeds. Recording the deeds gave the heirs constructive notice of potential problems. *See Brand*, 65 N.W.2d at 461. The Nasset heirs' claims are based on these documents.

[¶38] Viewing the evidence in the light most favorable to the Nasset heirs, the court correctly determined that there was no evidence of misrepresentation or inadequate disclosure and that Lakeside and the county court's actions put the heirs on notice about potential issues with the reservation and triggered the statute of limitations. The statute of limitations under N.D.C.C. § 30.1-21-05 expired and precluded the Nasset heirs' claim against Lakeside. The court properly granted summary judgment on the breach of fiduciary duty claim.

V

[¶39] We have consider the parties' remaining issues and arguments and conclude they are either without merit or unnecessary to our decision. We affirm the judgment.

[¶40] Gerald W. VandeWalle, C.J.
Jon J. Jensen
Dale V. Sandstrom, S.J.
Daniel J. Crothers
Jerod E. Tufte

15

[¶41] The Honorable Dale V. Sandstrom, S.J., sitting in place of McEvers, J., disqualified.